WILLIAM HANNAHS, Executor, etc., Appellant, *v.* DELIA HANNAHS et al., Respondents.

Where an executor and his testator were, prior to the death of the latter, copartners, and the former, without separating the interest of the latter in the firm property and assets, continues to employ and use the same in the business, he is properly chargeable, upon final settlement, with compound interest upon the value of the testator's share.

The allowance to an executor of a counsel fee, upon the final settlement of his accounts, is in the discretion of the surrogate.

The courts will not favor a claim upon the part of an executor or trustee to charge the beneficiaries as his tenants, or otherwise, for the use of his property, where, instead of settling up the estate placed in his charge, he has kept it open and unadjusted, mingling its affairs with his own, without ascertaining what is due and payable to each of the beneficiaries in the way the law has marked out; there is but this one way to manage the estate, whether the executor or trustee be of the blood of the testator and the beneficiaries, or a stranger.

(Argued November 20, 1876; decided January 16, 1877.)

THIS was an appeal from a judgment of General Term, affirming, with some modifications, a decree of the surrogate of Otsego county, settling the accounts of appellant, as executor of the estate of William C. Hannahs, deceased.

Numerous questions were presented as to various items of the account, most of which were disposed of upon the facts in the case. The deceased and the executor were copartners; the latter, after the death of the former, continued the business without making a division, and the surrogate charged the executor yearly interest upon the amount of the interest of the testator in the firm. *Held*, no error; that it was the duty of the executor, at once after the death of the testator, to have separated the interest of the deceased from the partnership business, and not having so done, it was proper to charge him with the interest for the use; that, while compounding interest is in some sense a penalty for negligence or wrong-doing, the executor here was properly chargeable with negligence.

The surrogate allowed the executor $200 counsel fee. *Held*, that the allowance of a counsel fee was in the discretion of the surrogate, and that the amount allowed was not excessive.

It appeared that at the request of the widow and children of the testator, the beneficiaries under the will, the executor purchased a farm, upon which the family resided. It appeared that the farm was cultivated by the children, under the direction of the executor; he had some of the proceeds. The amount of the expenditures and receipts did not appear. The executor claimed an allowance for the use and occupation of the farm. This was disallowed by the surrogate. *Held*, no error; what the court say upon the subject is as follows:

" *7th*. It is claimed in behalf of the appellant that he should be allowed for the use and occupation of the farm in New Jersey, or some reasonable sum for his purchase of it at the request of the widow and children of the testator.

This claim, upon legal principles, is an extraordinary one. It is not to be favored by the courts, that an executor of an estate may, from his own means, purchase a farm and place upon it the widow and heirs-at-law and next of kin and legatees of his testator, and instead of settling up the estate which is placed in his charge as trustee, keep the affairs of it open and unadjusted, and without ascertaining what is due and payable to each and all the beneficiaries of the estate confided

to him, in the way the law has marked out, may mingle their affairs with his in the way in which the appellant has done, and seek to charge them as his tenants, or otherwise, for the use of his property, upon the meager and insufficient data furnished by the proof in this case. There is but one way for an executor or other trustee to manage the estate put in his care, and that is the way which the law has marked out. And this remark applies as well to an executor or trustee who is of the blood of the testator and his beneficiaries, as to a stranger. Indeed it applies to such an one with more force. A relative, in the official position of executor or trustee, should be more jealous and exact, to comply with, and live up to, the precise line of legal requirement than a stranger; for there is in his case more of confidence and implicit reliance; and he should be on the alert that neither his *cestui que trust* nor himself are tempted by what may seem expediencies and easier modes to wander from the safe path of the law. We doubt not that the plaintiff felt a lively interest in the welfare of the respondents, and that his motives were good in his conduct in respect to this farm and their occupation of it. But he strayed away from the line of his official duty. If there is any lack of precise proof of the results of his act in taking this farm and putting them upon it, and any difficulty in arriving at a balance in figures of what it cost and what it benefited him, he must suffer by it. It appears from the proof that the appellant owned the farm and had some of the products of it, and that the respondents or some of them carried it on under the control of the appellant. The respondents had their shelter there, and, doubtless, some if not all of their daily bread from it. But they or some of them also expended upon it their daily labor, and used their faculties in its management. The data are not given in the proofs from which any tribunal can say what sum in figures is due to either party concerned in it. And as this result comes from the unauthorized course adopted by the appellant he must be the sufferer, if any one is harmed.

We cannot do otherwise than agree with the surrogate and the General Term in their disposition of this item.

The testimony tends to show that the testator was aware that the course pursued by him would not be approved by the

Surrogate's Court, and that the sums of money advanced would not be allowed on his accounting."

*E. M. Harris* for the appellant

*L. I. Burditt* for the respondents.

FOLGER, J., reads for modification by adding to the allowance to the appellant by the court below of $239, made up of three items, and $300 also made up of three items, as stated in the opinion, with proper adjustment of interest, and, as modified, affirmed.

All concur.

Judgment accordingly.