In the Matter of the Accounting of JOSEPH J. HEARNS et al., as Executors of STEWART BARR, Deceased, Respondents.

BEATRIX H. BARR et al., Appellants; MABEL V. BARR et al., Respondents.

Partnership — decedent's estate — construction of agreement as to ownership of membership in Stock Exchange purchased with partnership assets in name of decedent — jurisdiction of surrogate to charge executors with loss caused by delay in sale of membership in Stock Exchange.

The testator and one of the defendants, who is also one of his executors, were copartners in the stock brokerage business. The firm owned a membership in the Stock Exchange, which was purchased with partnership assets but which stood in the name of the testator. The partnership agreement provided that in case of the death of the testator this membership should be sold at once by his legal representatives and the proceeds paid in full to the survivor as liquidating partner, who should wind up the business of the partnership and pay to the estate of the decedent the share of the profits and of capital to which it might be entitled; testator's will also directed this to be done. The surviving partner and another, as executors, never disposed of the exchange membership, but on their accounting embodied therein a statement of the partnership business showing that there had been a liquidation of the partnership assets other than the Stock Exchange membership and that decedent's interest therein was charged to them at its appraised value. *Held*, that the legal title to the membership in the Exchange was in

testator and after his death in his legal representatives, and the equitable title thereto in the partnership and after testator's death in his partner as survivor, and that under the account filed by them the surrogate had jurisdiction to charge the executors with any loss to the estate arising from failure to perform their duty and that they were both properly charged with the value of the membership as of the time when it should have been sold.

*Matter of Hearns*, 163 App. Div. 897, reversed.

(Argued February 23, 1915; decided April 13, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 21, 1914, which reversed a decree of the Kings County Surrogate's Court settling the accounts of the executors of Stewart Barr, deceased, in so far as such decree purports to deal with the membership of said decedent in the New York Stock Exchange.

The facts, so far as material, are stated in the opinion.

*Alexander S. Bacon* for appellants. The executors, and not the liquidating partner, are responsible for the Stock Exchange membership not being sold. (*Binger Co.* v. *Plumberg*, 134 N. Y. Supp. 115; *Hirsch* v. *Amin*, 28 Misc. Rep. 228; *Lewis* v. *Hojer*, 16 N. Y. Supp. 534; *Walbridge* v. *Brooklyn Trust Co.*, 143 App. Div. 502; *Fairchild* v. *Fairchild*, 64 N. Y. 471; *Darrow* v. *Calkins*, 154 N. Y. 503; *Gilmore* v. *Ham*, 142 N. Y. 1; *Clausen* v. *Puvogel*, 114 App. Div. 445.)

*I. M. Dittenhoefer* for respondents. The surrogate erred in charging the accounting executors with the value of the membership in the New York Stock Exchange, for the reason that neither the membership nor the proceeds realized therefrom vested in the executors; and they were not liable to account therefor. (*Estate of Hoppock*, 1 Monthly L. B. 32; *Thomson* v. *Thomson*, 1 Bradf. 24; *Camp* v. *Fraser*, 4 Dem. 212; *Betts* v. *June*, 51 N. Y. 274; *Sweet* v. *Taylor*, 36 Hun,

256; *Williams* v. *Wheldon*, 109 N. Y. 333; *Wilson* v. *Internat. Bank*, 125 App. Div. 568; *Secor* v. *Tradesmen's Nat. Bank*, 92 App. Div. 294; *Preston* v. *Fitch*, 137 N. Y. 41.)

CHASE, J.   This appeal is in a proceeding commenced in the Surrogate's Court for an accounting by the executors of the decedent.   The testator whose estate is the subject of the accounting was at the time of his death one of the partners composing the firm of Barr & Hearns, engaged in the stock brokerage business.

The testator, Stewart Barr, and Joseph J. Hearns entered into a partnership agreement on the 12th day of January, 1905, which was re-written and re-stated on the 13th day of February, 1906, and was in force when Barr died.   The agreement as re-stated provides that the membership in the New York Stock Exchange standing in the name of Stewart Barr was purchased out of partnership assets at a cost of $79,010, and is part of the common capital of the partnership.   The agreement also, among other things, provides: "If the said Stewart Barr of the first part shall die before the expiration of said copartnership term the said membership in the New York Stock Exchange shall at once be sold by his legal representatives and the proceeds shall at once be paid in full to the party of the second part as liquidating partner, and the party of the second part shall thereupon as rapidly as in his discretion he may deem it advisable wind up the business of said copartnership and pay to the representatives of the party of the first part the share of profits and of capital to which the estate of the party of the first part is entitled as shown by the copartnership books, and the legal representatives of the party of the first part for the purpose only of verifying the accuracy of said liquidation shall have free access to the said copartnership books.   *   *   *  "   The testator's interest in the partnership was four-ninths thereof and

Joseph J. Hearns' interest therein was five-ninths thereof, but each agreed to share equally with the other in any profit or loss arising from the purchase and sale of the Stock Exchange membership.

The said Stewart Barr after entering into said partnership agreement made his will and he therein provided:

"The membership in the New York Stock Exchange standing in my name was purchased with funds taken from the capital of the firm of Barr and Hearns, which firm is composed of Joseph J. Hearns and myself, the cost of said membership was $79,010, as will appear on the copartnership books of said firm and the dues and assessments relating to said membership have been and are being paid by the said firm. Under the partnership agreements into which I have entered with the said Joseph J. Hearns I have agreed to share equally with said Hearns in any profit or loss accruing or incurred from the sale of said membership, and that in the event of my death prior to the expiration of the term of said copartnership there shall be paid to said Hearns from my estate one-half of any gratuity paid to my widow or next of kin by the said stock exchange. I do hereby direct my executors to sell the said membership in said stock exchange as soon after my death as possible, and if my partnership agreement with said Hearns or any renewal thereof is then in force to at once pay the entire proceeds of such sale to my said partner to the end that while liquidating the said copartnership business he may have custody of the entire capital of said firm and accrued profits, and thereafter account to my executors for my share therein according to the terms of the copartnership agreement then in force   *   *   *."

By his will Barr made his partner Hearns and Charles Martin Camp, his attorney, and also the attorney of the partnership, executors of his will.

The legal title to the membership in the Stock Exchange was in Barr and after his death in his legal representa-

tives and the equitable title thereto in the partnership and after such death in Hearns as the surviving member thereof. Under the partnership agreement and pursuant to the terms of the will it was the duty of the executors as Barr's legal representatives to sell the membership in the Stock Exchange without delay and to pay and dispose of the proceeds thereof as provided by the terms of said partnership agreement and said will. The duty devolving upon the executors was not a mere nominal one, but a well-defined, positive and active duty. They are responsible, not alone to the surviving and liquidating partner, but under the circumstances disclosed upon this appeal, to those interested in the estate of Stewart Barr for the faithful discharge of their duties under the will in connection with the Stock Exchange membership.

Stewart Barr died December 20, 1909, and his will was admitted to probate and letters testamentary were issued to Hearns, his surviving partner, and Camp, his attorney, as executors, on the 11th day of January, 1910. Hearns decided to continue in the business that had theretofore been conducted by the partnership of Barr & Hearns, and for that purpose it was necessary, or at least desirable, for him to obtain a membership in the Stock Exchange. He consulted the secretary of the exchange in regard to the purchase of a membership and of transferring to himself individually the membership that had theretofore been held for the partnership in the individual name of the deceased partner, Barr. He was told by the secretary of the exchange that the rules of the exchange would not permit the transfer of a membership from an executor as such to himself individually, and that he would have to purchase a membership of a stranger; whereupon and on December 24, 1909, he agreed to purchase a membership of a stranger, and two days after the probate of said will the seat so purchased was transferred to Hearns and he paid therefor $93,000.

On the same day he and Camp, as executors, gave to the secretary of the exchange a written order to sell a membership at $95,000. The price fixed by them for the membership was $1,000 more than any membership had ever sold during the history of the exchange and $2,000 more than the sum at which he, Hearns, purchased the membership for himself that was transferred to him that day.

The membership in Barr's name has not been sold. There was never a sale of a membership after January 11, 1910, for an amount exceeding $93,000 and sales for that amount did not continue except for a few days and the price thereafter continued to decline with but slight variations. A sale was made for $82,000 within less than sixty days after the probate of testator's will, and for $59,000 in March, 1912, and the market value for such membership at the time of the trial herein was much less than any of the amounts stated. The surrogate found:

" 3. Said executors took no adequate steps to dispose of said stock exchange membership within sixty days after January 11, 1910 (the date on which letters testamentary were issued to them), and said Stock Exchange membership has not yet been sold.

" 4. That the value of said Stock Exchange membership at all times within the said period of sixty days after January 11, 1910, and the sum for which it should and could have been sold during that period was $80,000."

The decree charged said executors with $80,000, the value fixed by the surrogate for said membership as of the time when it should have been sold by the executors. The Appellate Division reversed the decree of the Surrogate's Court holding that the equitable title to the membership in the Stock Exchange was in the surviving or liquidating partner and that he alone was responsible for any failure to dispose of the membership in accordance with the partnership agreement, and that the Surrogate's

Court had no jurisdiction to determine the question of the responsibility of such surviving partner by reason of the alleged negligence in the disposition of said seat.

The order of the Appellate Division did not reverse any of the findings made by the Surrogate's Court, nor does it contain any new findings of fact. The findings, therefore, remain in full effect, and must be considered in connection with the pleadings in that court. (*Jacobson* v. *Brooklyn Lumber Co.*, 184 N. Y. 152.)

The written petition of the executors for an accounting herein was accompanied by their account as provided by section 2728 of the Code of Civil Procedure as it existed at the time of filing such petition and account. Such petition and account accompanying the same together with the objections constituting the answer to the petition and account are the pleadings in this proceeding. (*Matter of Sloane*, 135 App. Div. 703; *Matter of Woodward*, 69 App. Div. 286; *Matter of Heuser*, 87 Hun, 262.)

It is stated among other things in the account of the executors that the membership in the Stock Exchange was not sold because of " the desire of the surviving partner that the seat be not sold at the prices that have (had) prevailed since the testator's death." The account which is the joint account of Hearns and of Camp as executors also contains a statement by them as such of the items of receipts by Hearns as such surviving and liquidating partner and of his disbursements as such together with a statement of the adjustment of the personal accounts of the partners with the partnership.

It also appears by such account that the partnership property was appraised in separate items and that the interest of the estate in the membership in the Stock Exchange as a separate item of partnership property was charged to the executors in the account as appraised. The remaining or undisposed of assets of the partnership and each item thereof are stated in a schedule at the conclusion of the account as follows:

"The balance of capital with which we charge ourselves as shown by summary statement is at appraised values as follows: * * *

| | | |
|---|---|---|
| "New York Stock Exchange Membership carried on the books of the firm at cost, $79,010 — 4/9ths................ ...... | | $35,115 56 |

In apparent profits (which partnership agreement provided should be shared equally): Appraised value—

| | |
|---|---|
| December 20, 1909.......... $93,000 | |
| Carried at cost............. 79,010 | |

| | | |
|---|---|---|
| $13,990 ½ = | 6,995 00 |
| "4/9ths American Smelters Common Appraised value $10,000.............. | 4,888 89 |
| "4/9ths Claim against S. J. Baxter, $807.04 | 358 68 |
| | $46,958 13" |

In corroboration of the account, which assumes that there has been a complete liquidation of the partnership at least so far as creditors and so far as an adjustment between the partners is concerned, it appears from the testimony of Hearns given on the trial that at the time he first talked with the secretary of the Stock Exchange about transferring to himself the membership of Barr, and also at the time when the offer was made in writing by the executors to sell the membership for $95,000, that all of the indebtedness of the partnership of Barr & Hearns had been paid, and that all of the business of the partnership had been actually liquidated, excepting, of course, the membership in the Stock Exchange, the legal title to which was in the executors.

If the executor, Hearns, had been the sole executor of the testator's estate, as well as the surviving partner, he could have accounted as such surviving partner in connection with his account as executor. (*Matter of Laney,*

50 Hun, 15; affd., 119 N. Y. 607; *Hannahs* v. *Hannahs*, 68 N. Y. 610.) It has been held to be the duty of a surviving partner who is also an executor, to account in the Surrogate's Court. (*Matter of Dummett*, 38 Misc. Rep. 477; *Matter of Mertens*, 39 Misc. Rep. 512.) The duty of selling the membership in the Stock Exchange rested upon Camp as executor to the same extent that it rested upon Hearns as executor. It is clear from the account that the executors, and each of them, not only accepted such duty, but that they intended by the account to submit to the Surrogate's Court the account of Hearns as surviving partner mingled with and as a part of their account as such executors.

The surviving partner as such could not sell the membership in the Stock Exchange. He is only answerable under the agreement and under the will for the proceeds of the membership after the same is sold. If an effort is hereafter made as is suggested by the Appellate Division to hold the surviving partner as such for the loss arising by reason of the delay in selling the membership he will doubtless insist that as surviving partner he never had the proceeds of the sale of such membership. The executors as such were trustees for the benefit of the partnership and the persons entitled to the partnership assets upon liquidation. The surviving and liquidating partner has performed his duties as such as appears by the account and has turned over to himself and his associate as executors every item of property received and in his hands as such surviving partner. The Surrogate's Court did not under the statute as it existed at the time of the commencement of this proceeding have jurisdiction to settle the accounts of a surviving partner as such, but it had jurisdiction over the executors as such and jurisdiction to charge them for the benefit of the estate with any damage arising from failure to perform their duty. If an issue is presented as to whether the executors have failed to carry out and perform the duty intrusted to them by

the will and that by such failure to perform their duty a loss has resulted to the estate the Surrogate's Court can determine such issue.    In this case the duty of the executors to account for the testator's interest in the partnership assets in the Surrogate's Court is emphasized and made certain by the form of the account and the submission of the items in liquidating the partnership as a part thereof to the Surrogate's Court.    We think the Appellate Division was in error in refusing to sustain the decree of the surrogate.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in both courts payable by the executors personally.

HISCOCK, COLLIN, MILLER, CARDOZO and SEABURY, JJ., concur; WILLARD BARTLETT, Ch. J., absent.

Ordered accordingly.