Nathaniel Hawthorne, Appellant, v. Simeon Frost, Sr., and Jesse McGraw, Defendants, and Citizens Casualty Company of New York, Garnishee-Appellee.

Gen. No. 45,546.

Opinion filed November 6, 1952.
Released for publication December 9, 1952.

ALEXANDER J. REIFF, of Chicago, for appellant; DAVID H. KRAFT, of Chicago, of counsel.

JOHN J. MORRIS, and V. J. LISS, both of Chicago, for appellee; V. J. LISS, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

The plaintiff, Nathaniel Hawthorne, sought by garnishment to reach the funds of the Citizens Casualty Company of New York, a corporation, on a judgment obtained by him for an assault wilfully and wantonly committed against him by Jesse McGraw, the operator of a taxicab owned by Simeon Frost, Sr. Upon the pleadings, verdict of the jury, answer of the jury to a special interrogatory, the judgment entered in the principal suit on the general verdict of the jury, the transcript of the testimony of plaintiff, the oral stipulations of the parties as to certain facts, supporting authorities and arguments of counsel, the court entered an order discharging the garnishee, from which plaintiff appeals.

Upon trial of the principal suit plaintiff testified as to the relevant issues which disclose that on October 27, 1946 he was driving his automobile south on South Park avenue near the intersection of 51st street in Chicago. About sixty feet north of the intersection the Cadillac taxicab of Simeon Frost, Sr., driven and operated by Jesse McGraw, passed him and entered the intersection after the traffic light had changed. McGraw suddenly put his cab in reverse, endangering

280

plaintiff's automobile which was immediately behind and about four feet from the traffic light post. Cars were lined up behind plaintiff, and although he sounded his horn, McGraw continued to back up his cab from the intersection until his rear bumper collided and locked with the front bumper of plaintiff's automobile. After the collision both McGraw and plaintiff stepped out to inspect the interlocked bumpers. As McGraw stepped out of his cab he "started cussing" and, with his hand behind him, ordered plaintiff "to get them [the bumpers] loose" because he had "to be going." When plaintiff told him that he could not pry the bumpers apart himself and asked for his assistance, McGraw launched a brutal violent assault upon plaintiff, without any provocation, and injured his eye which subsequently had to be removed; he lost consciousness during the assault and was taken to a hospital. The jury answered in the affirmative the following interrogatory: "Was defendant, Jesse McGraw, at the time and place, in question, operating the taxicab vehicle, herein, as an employee or agent of defendant, Simeon Frost, Sr.?" Along with the answer to this interrogatory the jury returned a verdict finding Frost and McGraw guilty and assessing plaintiff's damages in the sum of $3,000. Motions for judgment notwithstanding the verdict and for a new trial were overruled, and judgment was entered on the verdict.

The Motor Vehicles Act (Ill. Rev. Stat. 1951, ch. 95½, par. 59, sec. 42a (1) [Jones Ill. Stats. Ann. 85.05]) required in 1946 that the owner of a motor vehicle for the carriage of passengers for hire, in any incorporated city, town or village in Illinois, should at all times maintain in full force an indemnity bond with a surety company or a bond of such owner, or a policy of insurance in the amount of $2,500 for each such vehicle. Specifically, it provided that "each of

said bonds shall be conditioned that the owner of said motor vehicle (giving its manufacturer's name and number and state license number) will pay all final judgments recovered against such owner for any injury to or death of any person resulting from the negligence of such owner or his agent, in the operation of such motor vehicle, * * * ." Section 28–4 of the Public Vehicle Act of the Municipal Code of Chicago similarly prescribed that "No public passenger vehicle shall be licensed unless the owner of said vehicle has filed with the commissioner or the secretary of state a continuing policy or policies of insurance in full force and effect after insurance on a solvent and responsible company authorized to do business in the state, to be approved by the commissioner, covering liability for any injury to or death of any person or for damage to property resulting from negligence in the operation of such vehicle during the license period."

It will be noted that the regulation of the Municipal Code substantially corresponds with that of the Motor Vehicles Act. The policy of insurance recites that it "is issued pursuant to the provisions of the Motor Vehicle Law, as amended by an Act entitled 'An act to add sections 42a, 42b, 42c and 42d to the Motor Vehicle Law, approved June 30, 1919, as amended.' Approved June 21, 1923 and July 8, 1931." It indemnified Frost as the owner of the taxicab "against liability for any injury to or death of any person resulting from the negligence of such owner, or of his or its agent or agents, * * * in the operation" of the motor vehicle, indicating that the policy issued by the garnishee was written in the words of the statute and the Municipal Code.

██ The question presented is whether the policy issued to Frost as the taxicab owner, pursuant to the requirements of the Motor Vehicles Act and the Mu-

nicipal Code of Chicago, and written in the language of the Act and the Code, extends insurance protection for injuries arising from a deliberate wanton and unprovoked assault committed by the assured through his servant in the operation of the taxicab. Garnishee contends that only accidents resulting from the negligent operation of the taxicab are covered by the statute and that it does not include assaults committed outside the operation of the cab. There is a diversity of opinion on this question among the courts in various jurisdictions, but the current weight of authority holds that statutory indemnity bonds and policies of this kind must be strictly construed against the garnishee. We had occasion, in *E. J. Albrecht Co. v. Fidelity & Casualty Co. of New York*, 289 Ill. App. 508, to consider whether a public liability insurance policy which indemnified the insured against bodily injuries suffered ''as the result of an accident'' covered damages sustained in consequence of the unprovoked and unwarranted shooting of a trespasser who was engaged in the act of stealing and carrying away lumber of the insured when shot by one of his agents, and after analyzing the divergent views on the subject in the various States we reached the conclusion that, in accord with the greater weight of authority and the better-reasoned cases, a public liability policy should be so broadly construed as to bring within its terms an injury to a third person resulting from wilful assault by an employee of the company covered. In *Georgia Casualty Co. v. Alden Mills*, 156 Miss. 853, 127 So. 555, a suit brought on a policy indemnifying the employer against loss from claims for injuries accidentally suffered, the question arose whether a person who had been assaulted and injured by another, without any provocation on his part, has suffered an accidental injury. The court pointed out the diversity of opinion on this sub-

283

ject in the various jurisdictions, but concluded that "injuries sustained by a person while defending himself from an unprovoked assault are within the terms of a policy insuring him against injury accidentally inflicted—that an injury inflicted on one who did not voluntarily enter into the affray in which he was injured is an accident." Although the authorities discussed in the *Albrecht* and *Mills* cases deal principally with injuries accidentally inflicted as the result of an unprovoked assault and not with phases of "negligence" under statutory bonds and policies, those decisions emphasize the broad statutory construction given to indemnity bonds and policies which are primarily designed, under the motor carrier laws, for the protection of the public; and it therefore seems to us that the terms "negligence" and "operation" in the policy here in question should, under the existing circumstances, be so construed as to include injuries outside the vehicle by assault. McGraw was negligent in the operation of the cab, and his assault upon plaintiff followed as a close causal consequence of his negligence. If "wilful assaults" are within the purview of "accidents" in Illinois, it would seem to follow that such assaults inevitably comprise also a phase of negligence relating to culpable offenses. In *Huntington Cab Co. v. American Fidelity & Casualty Co.*, 155 F. (2d) 117, the court was required to decide whether an automobile liability insurance policy issued to the cab company covered it with respect to a judgment rendered against it in favor of a passenger in one of its cabs for an unprovoked assault and battery committed upon him by the driver of the cab. The court considered that the question of accidentality "is determined from the standpoint of the injured person and not from the standpoint of the aggressor. If the injury is caused by the insured himself or by his em-

ployee with his authority or consent, it is not accidental under either form of policy [an accident and life insurance policy or a public liability policy], and so coverage is denied; but where an intentional injury is inflicted by an employee of the insured without the latter's authority or consent, it is generally held, a few decisions to the contrary, that the injury is suffered as the result of an accident within the meaning of the contract of insurance.'' The court discussed at some length, and quoted with approval from, *Green Bus Lines v. Ocean Accident & Guaranty Corp.*, 287 N. Y. 309, 39 N. E. (2d) 251, which held against a restrictive interpretation of similar language in the public liability insurance policy there involved. The circuit court also considered opinions passing on the interpretation of public liability policies insuring places of business, and noted that ''the analogy is very close to the situation which arises under public liability policies that insure the operator of a place of business such as a theatre against loss, by reason of his liability for damages for injuries which result from the ownership, maintenance or use of the place. Such policies are held to cover not only an injury caused by the defective condition of the place but also injuries suffered by reason of an assault by an employee or an assault by another patron whom the management fails to take reasonable care to restrain,'' citing, among other decisions, the well known case of *Fox Wisconsin Corporation v. Century Indemnity Co.*, 219 Wis. 549, 263 N. W. 567.

██ In *Jamison v. Encarnacion*, 281 U. S. 635, an employee of defendant was assaulted by his foreman, and in construing the term ''negligence'' under the Federal Employers' Liability Act providing that ''every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable in dam-

ages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier," the court held that the employee was entitled to recover if, within the meaning of the section quoted above, his injuries resulted from the negligence of the foreman. "The question is whether 'negligence' as there used includes the assault in question. * * * 'Negligence' is a word of broad significance and may not readily be defined with accuracy. Courts usually refrain from attempts comprehensively to state its meaning. * * * Some courts call willful misconduct evincing intention or willingness to cause injury to another gross negligence. [Citing, among other authorities, Illinois cases.] And it has been held that the use of excessive force causing injury to an employee by the superintendent of a factory in order to induce her to remain at work was not a trespass as distinguished from a careless or negligent act. * * * While the assault of which plaintiff complains was in excess of the authority conferred by the employer upon the foreman, it was committed in the course of the discharge of his duties and in furtherance of the work of the employer's business. As unquestionably the employer would be liable if plaintiff's injuries had been caused by mere inadvertence or carelessness on the part of the offending foreman, it would be unreasonable and in conflict with the purpose of Congress to hold that the assault, a much graver breach of duty, was not negligence within the meaning of the Act." In consonance with this reasoning, it would seem to us to be incongruous to hold that a wilful assault constitutes an accident but not negligence; or for the term "negligence" in its broadest significance not to include the wilful assault which clearly resulted

from McGraw's negligence in the operation of the cab. See also *Hartford Accident & Indemnity Co. v. Wolbarst,* 95 N. H. 40, 57 Atl. (2d) 151, and *Metzler v. Layton,* 373 Ill. 88. In the *Metzler* case it was held that the shooting of plaintiff by an employee of defendant corporation constituted a wilful act of "negligence," and there the court quoted with approval from *Central Motor Co. v. Gallo* (Court of Civil Appeals of Texas), 94 S. W. (2d) 821, to the effect that " 'the master who puts the servant in a place of trust or responsibility, or commits to him the management of his business, or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person.' " Here, in the principal suit, the jury, by its answer to the special interrogatory and by its general verdict, specifically found that McGraw was driving and operating the taxicab at the time and place in question as the employee or agent of the defendant Frost, the owner of the cab and the one to whom the insurance under the statutory bond was issued by the garnishee. These findings by the jury conclusively determine that the injury to plaintiff resulted from the wilful "negligent" acts and misconduct of McGraw, as Frost's agent in the operation of the cab; and therefore the physical assault upon plaintiff by McGraw comprises an act of wilful negligence resulting from the operation of the cab.

In support of garnishee's contention that the statute, by its very language, limits the liability of the carrier of passengers for hire to accidents resulting from the negilgence of the owner or his agent in the operation of the motor vehicle and does not include assaults committed by the owner or his agent outside

287

the operation thereof, their counsel cite and rely on two Illinois decisions, *People v. Kastings,* 307 Ill. 92 and *Weksler v. Collins,* 317 Ill. 132. In the *Kastings* case the court held the former section 42 of the Vehicle Act to be unconstitutional because it provided terms and conditions for a liability bond different from those for a liability insurance policy, and the court held that it was therefore discriminatory in its treatment. While paragraph 1 of section 42a of the Motor Vehicle Act, as it existed at that time, provided that the liability bond should be conditioned upon the liability of the cab owner for damages by reason of "the violation of any of the laws of the State," such liability was not prescribed for the insurance policy under paragraph 2 of section 42a. In commenting on this the court used the following language: "It [the provision] is susceptible of the interpretation that the owner, under his bond, could be held liable under the statute if he or his chauffeur unlawfully assaulted and injured another person while driving the machine," and that "no such liability, whatever it may be, is put upon an owner providing insurance as such surety." Counsel place emphasis on these quotations, but the language used was purely *obiter dictum,* and was manifestly intended to import only that a like provision for "liability" sustained by reason of "the violation of any of the laws of the State," was absent in paragraph 2 of section 42a, thereby rendering the Act discriminatory and consequently unconstitutional as class legislation. It should also be noted that the *Kastings* case was decided in 1923, long prior to *Jamison v. Encarnacion* (1930), *Georgia Casualty Co. v. Alden Mills* (1930), *Green Bus Lines, Inc. v. Ocean Acc'd & Indem. Co.* (1942), and *Huntington Cab Co. v. American Fidelity & Casualty Co.* (1946), which varied from the earlier decisions and support the current weight of authority in construing the coverage of the liability policies of carriers.

288

In *Weksler v. Collins,* only that part of subsection 1 of the then section 42a of the Act which provided that the bond of personal surety furnished by the taxicab owner, pursuant to the act, "shall * * * be a lien * * * on such real estate so scheduled" on the bond, was found unconstitutional, while the remainder of the act was declared to be valid. It was there held that the use of taxicabs solely for private purposes and not for hire was *dehors* the regulations of section 42a. In the case at bar it is admitted and held by the jury's verdict and answer to the interrogatory that the taxicab was engaged at the time for the purpose of carrier business and not for private use.

 For the reasons indicated we are of opinion that the judgment order of March 30, 1951 discharging the garnishee, was erroneous. Accordingly, the judgment is reversed, and the cause is remanded with directions to enter judgment for plaintiff and tax costs against the garnishee.

*Judgment reversed and cause remanded with directions.*

NIEMEYER, J. and BURKE, J., concur.