James Galvan, Appellee and Cross-Appellant, v. Louis Torres, Appellant and Cross-Appellee.

Gen. No. 10,860.

Second District.
January 10, 1956.
Released for publication January 30, 1956.

George H. Wiley, of Ottawa, and Taylor E. Wilhelm, of Mendota, for appellant; Fred Wagner, of Mendota, of counsel.

Zwanzig, Thompson and Lanuti, of Ottawa, for appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

The complaint in this case alleged that the plaintiff, James K. Galvan, lived at 313 East Marquette Street and that the defendant, Louis Torres, lived at 315 East Marquette Street in Ottawa, Illinois, and that they both lived at said places on and prior to June 20, 1953; that at about 1:30 o'clock on the morning of that day, the defendant maliciously and wantonly assaulted the plaintiff while he, the plaintiff, was in his own yard, by slashing him with a knife inflicting serious wounds upon many and diverse parts of his body, and that as a result thereof the plaintiff suffered great pain, expended large sums for doctor and medical bills, was prevented from attending to his ordinary occupation and business, and was permanently injured. The answer of the defendant admitted that the parties lived in Ottawa as alleged but denied

all the other averments of the complaint. Upon a jury trial of the issues thus made, a verdict was returned finding the defendant guilty and assessing the damages of the plaintiff at $10,000. After denying defendant's motions for a new trial and for judgment notwithstanding the verdict, the trial court entered judgment on the verdict. Thereafter plaintiff filed a motion to modify the judgment to include therein a finding that malice was the gist of the action. The court denied this motion. The defendant has appealed from the judgment entered against him, and the plaintiff has filed a cross appeal from the order of the court denying his motion for a finding that malice was the gist of the action.

Counsel for appellant insists (1) that the court erred in refusing to withdraw a juror and declare a mistrial because of prejudicial statements made in the presence of the jury by counsel for the plaintiff; (2) that the trial court improperly admonished counsel for defendant in the presence of the jury during the trial; (3) that the court erred in admitting certain evidence offered by the plaintiff and in refusing to admit certain evidence offered by the defendant. It is also insisted that the verdict is excessive and the result of prejudice against the defendant which was created by the erroneous rulings of the court and the deliberate misconduct of counsel for the plaintiff.

The evidence discloses that the plaintiff, his wife, Beatrice, and daughters, Aurora and Angela, lived at 313 East Marquette Street in Ottawa. The lot upon which their home was located was eighty-eight feet wide and one hundred thirty feet deep. The home of the defendant was immediately east and adjoining the Galvan lot, and their residences were about forty feet apart and separated by a hedge fence. According to the testimony of the plaintiff, he, the plaintiff, arrived at his home about five o'clock on Friday afternoon, June 19, 1953, from his work as a bricklayer's helper. After he had had his evening meal, he left home about

seven o'clock, paid a coal bill to a Mr. Burke, and then he and Burke went to a tavern where they remained an hour and a half, during which time the plaintiff drank two bottles of beer. Mr. Burke went home, and the plaintiff proceeded to another tavern and remained there until after midnight. At the second tavern he had four or five bottles of beer. He than proceeded to another tavern, where he remained for fifteen minutes, and had a glass of beer there. He then proceeded homeward, entering his lot at the rear, and singing as he went along. Sitting upon the steps of the back porch of his home were his wife and daughter, Angela, and when the plaintiff arrived there he stopped singing. He refused his wife's suggestion to go into the house and go to bed but sat down on the porch step, took his shoes, socks, and hat off, cursed the mosquitoes, laid down on the ground under a pear tree three or four feet from the southeast corner of the steps of the rear porch and immediately went to sleep and knew nothing until the following Sunday morning when he awakened at the Ryburn-King Hospital in Ottawa.

According to the testimony of plaintiff's wife and daughter, Angela, they remained on the porch steps after the plaintiff had laid down under the pear tree. About fifteen minutes after he had gone to sleep, the daughter observed the defendant coming very slowly through the hedge from his property onto the Galvan premises. He had a knife in his hand and, without a word, proceeded to cut the prostrate body of the plaintiff. The other daughter of the plaintiff, Aurora, was in the house asleep but was awakened by her sister and ran to the yard and saw the defendant "slashing" at her father with a knife. She called to the defendant to stop and ran for help. Police officers arrived shortly thereafter, and they testified that they found the plaintiff lying on the ground about six feet from the porch of his home all covered with blood and with his hat and a pair of shoes and socks lying next to his body. The

231

blood was all in one place and in the form of a pool near the pear tree. An ambulance was called, and the plaintiff was removed to the Ryburn-King Hospital.

The defendant's testimony was to the effect that he was born in Mexico and unable to read or understand the English language. He testified that when the plaintiff returned home about 1:30 o'clock on the morning of June 20, 1953, he was awakened by Galvan shouting in the window of the defendant's home that he was going to kill the defendant and his family; that he looked out the window of his bedroom and saw Galvan; that the defendant then put on his shoes and trousers and went outside to meet Galvan, and a fight between him and the plaintiff ensued. He stated that Galvan sang indecent words to him and started to kick him in the stomach and legs; that he, the defendant, then took his knife from his pocket and struck the plaintiff on the shoulder; that Galvan then went into his (Galvan's) yard and the fight was continued and Galvan fell under the pear tree and the defendant returned to his own home. Defendant denied that he ever cut Galvan after he fell, insisted that Galvan was not asleep at any time and testified that he did not see Mrs. Galvan or either of the daughters there that evening.

■■ When counsel for the plaintiff was stating his case to the jury, he outlined the facts that he expected to prove on behalf of the plaintiff. These included the fact that the defendant had been indicted for making an assault with an intent to inflict a bodily injury upon the plaintiff and that the defendant had pleaded guilty to this indictment. Counsel for defendant objected to these statements, but his objection was overruled. Upon the trial the court overruled defendant's objection to the introduction of this indictment and defendant's written plea of guilty thereto. Counsel now insist this was error. There is no merit in this contention. A plea of guilty to a criminal indictment

232

for assault and battery is admissible in evidence in a civil case based upon the same assault and battery as it is an admission against interest. (Young v. Copple, 52 Ill. App. 547; Cammarano v. Gimino, 234 Ill. App. 556.) The defendant did not seek to explain his plea of guilty, nor was he asked by his counsel why he pleaded guilty. Such evidence would have been admissible.

 The defendant offered certain testimony tending to prove self-defense, justification or excuse for his assault upon the plaintiff, but the court refused to admit such evidence, and under the pleadings of this case the ruling of the court was clearly correct. (Chicago Title & Trust Co. v. Core, 223 Ill. 58; DeFreitas v. Nunes, 156 Ill. App. 17.) The defendant also offered certain testimony relative to his good character and reputation and the bad character and reputation of the plaintiff. Since the assault was admitted by the defendant, character and reputation were not an issue in the case and were not a proper subject of inquiry, and evidence relative to the same was not admissible. (Reimenschneider v. Neusis, 175 Ill. App. 172; Cummins v. Crawford, 88 Ill. 312.)

██ Nor do we believe that the verdict of the jury is excessive. The special damages proved amounted to $2,776 and consisted of hospital and doctor bills and loss of wages. The medical testimony showed that the plaintiff was in a semicomatose condition upon his arrival at the hospital. He required the attention of three surgeons who treated the multiple lacerations which they found on his torso, hand, back, neck, arms and abdomen and which required more than five hundred sutures. He remained in the hospital fifteen days and was incapacitated from doing any work for a considerable length of time. It also appeared that he had many permanent scars and suffered a serious permanent injury to his left arm, wrist and hand and that he

had almost a complete loss of the muscles which control the closing and spreading of the fingers and which affect the strength of the hand.

As to the cross error assigned by the plaintiff, the trial court was right in its ruling denying the motion of plaintiff to modify the judgment so as to include therein a finding that malice was the gist of the action. There was no finding by the jury in this case that malice was the gist of this action. In Ingalls v. Raklios, 373 Ill. 404, the court said (p. 407): "The remaining question leads to a consideration of statements contained in the judgment. In First National Bank v. Burkett, 101 Ill. 391, where the court in considering a case of this character said that 'the term "malice" in this form of action is not to be considered in the sense of spite or hatred against an individual but of malus animus and as denoting that the party is actuated by improper and indirect motives,' and in considering whether malice was the gist of the action it was stated: 'The gist is defined to be the cause for which an action will lie—the ground or foundation of a suit, without which it will not be maintainable—the essential ground or object of a suit, and without which there is not a cause of action.' From these definitions it is apparent that a defendant could be actuated by malice in committing a tort against the plaintiff and yet malice not be the gist of the action. The statement in the judgment that the court makes a special finding of malice is not the equivalent of a finding that malice was the gist of the action upon which judgment was entered." Since the gist of an action for assault and battery is not malice, a special finding by the court in this case that the gist of the action was malice, as requested by plaintiff, would have been improper.

Counsel for appellant complains of the trial court's conduct toward him and calls our attention to this statement made by the trial court: "I want to state

that conduct of counsel for defendant in this case has been shameless. He has hollered at the Court in a loud and continuous manner. Not only has he done it in this case but in the McKenzie case and in the Carver case. His conduct is crude and shameless and he shows no regard whatever for his duty as an officer of this Court." This statement was not made in the presence or hearing of the jury. An examination of the record in this case convinces us that the trial court was a "monument of patience" during the entire trial of this cause. While the typewritten and printed pages of the record and abstract cannot reflect whether the statements of counsel in addressing the court or counsel were loud or soft, no one can read this record without concluding that in repeated instances the remarks and statements of counsel were inordinate, unduly repetitious, intemperate, and inconsiderate, and the trial court's appraisal of counsel's conduct is abundantly supported by the record.

■ ■ Our rules require counsel for appellant to prepare a fair and adequate abstract of record. This was not done in this case. The record in this case consists of 436 pages. Appellant filed an abstract of forty-four pages, but counsel for appellee was obliged to supplement this abstract with an additional one of thirty-eight pages. In his argument counsel for appellant states that the trial court referred to the plaintiff and then inquired of counsel for appellant "How can you impeach a man who is asleep?" Counsel for appellant then comments: "The court (by this inquiry) practically told the jury that the defendant's testimony was false, that there was no fight and that Torres cut a sleeping man who never wakened. This," concludes counsel, "amounted to a verbal direction by the judge to the jury, that the plaintiff told the truth and Torres lied." Counsel then calls our attention to the testimony of Torres to the effect that the plaintiff and defendant

235

started to fight at the southwest corner of defendant's house and concludes that "the court by his statement usurped the jurors' prerogative and determined the contested issue of fact for them." An examination of the record in this case discloses that the court, outside the presence of the jury, had a discussion with counsel in connection with an offer of proof, and that counsel for appellant said to the court: "Is it the court's position that because he (the plaintiff) was asleep that nothing happened that night,—therefore it is the court's position that we cannot go into that because he (the plaintiff) stated nothing happened." The court then said: "How can you impeach him when he says he was asleep?" To which counsel said he just wanted to get the position of the court. The record then shows that following this discussion the jury returned into court. This court should be able to rely upon the abstract of the record as prepared by counsel for appellant and upon counsel's statement and should not be required to examine the record to ascertain the facts; neither should counsel for appellee be required to furnish an additional abstract in order to correctly present the record to this court.

We find no reversible error in this record, and the judgment of the trial court will be affirmed.

Judgment affirmed.

EOVALDI and CROW, JJ., concur.