WAYNE LEE THORNTON, Plaintiff-Appellant, *v.* BEN PAUL *et al.*, Defendants.—(ILLINOIS FOUNDERS INSURANCE COMPANY, INC., Garnishee-Appellee.)

Fourth District   No. 15875

Opinion filed June 2, 1980.

GREEN, J., concurring in part and dissenting in part.

James Walker, Ltd., of Bloomington, for appellant.

Howard W. Small, of Thomas, Mamer, Haughey & Miller, of Champaign, for appellee.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

This case has been in the circuit court twice, once before in this tribunal, across the hall to the Illinois Supreme Court, and is now here before us again.

Regrettably—it must go back once more.

The scenario arises from the traditional display of merriment associated with ringing out the old and ringing in the new on New Year's Eve and the early morning hours of New Year's Day. According to our plaintiff here, his enjoyment of the festivities surrounding the coming of 1973 was abruptly ended when he was struck by a wooden object wielded by Ben Paul, the proprietor of a spirit dispensary known as Ben's Den, Inc.

Defendant Paul—the "Ben" of "Ben's Den"—was charged with aggravated battery as a result of the incident. On the day set for trial, a charge of battery was added, and he was found guilty of the new charge following a bench trial on stipulated facts. The aggravated battery charge was "nolle prossed."

On August 7, 1973, Thornton filed a two-count complaint charging defendants Ben Paul and Ben's Den, Inc., with wilful and wanton misconduct, seeking $14,000 in compensatory and punitive damages.

At the time of the event in question, the defendants, Paul and Ben's Den, Inc., had a liability insurance policy with Illinois Founders Insurance Company. That policy provided that Illinois Founders will pay all sums which the insured shall become legally obligated to pay as damages for personal injuries caused by an occurrence arising out of the ownership, maintenance or use of the insured premises and that Illinois Founders will defend any such suit against the insured. The term "occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured * * *."

Also appended to the policy was an endorsement which stated:

"EXCLUSION OF ASSAULT AND BATTERY

It is agreed that the insurance does not apply to Bodily Injury or Property Damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such assault and battery."

After investigating the incident, Illinois Founders determined that it was outside of the policy coverage and notified Paul of its denial of

124

coverage. Paul then engaged the services of a personal attorney who filed an answer and an affirmative defense.

Following discovery depositions, Thornton, with leave of the court, filed an amended complaint alleging that Paul "negligently" struck him. The amended complaint sought $30,000 in damages. Paul's personal attorney requested Illinois Founders to defend against the amended complaint, and in a letter dated August 19, 1974, Illinois Founders refused.

Sometime between July 24, 1974, and March 16, 1975, Paul and Thornton entered into an agreement wherein Thornton agreed to settle his right to pursue Ben Paul or Ben's Den for any portion of a judgment which may be rendered, for the sum of $100. The agreement expressly provided that Thornton was free to pursue his suit to judgment and collect any judgment from Illinois Founders.

On March 17, 1975, a default judgment was entered for $30,000 after Paul's attorney failed to either file a responsive pleading to the amended complaint or answer the call for trial. The trial court was never advised of the agreement.

On April 16, 1975, Thornton filed an affidavit for garnishment against Illinois Founders, and following a hearing, Illinois Founders was ordered to pay Thornton the amount of the judgment, plus costs. A notice of appeal was filed from that judgment. Illinois Founders then filed a section 72 petition to vacate the default which was denied. A second notice of appeal was filed. The appeals were consolidated in this court.

On August 8, 1977, this court filed an opinion affirming the trial court. (*Thornton v. Paul* (1977), 51 Ill. App. 3d 337, 366 N.E.2d 1048.) The decision was appealed to the supreme court, which affirmed as to the section 72 petition but reversed and remanded the garnishment action. *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.

The supreme court initially noted the general rule that an insurer's failure to defend estops it from later raising policy defenses for noncoverage in a subsequent action in garnishment by the insured or a judgment creditor. The court concluded, however, that "because of the conflict of interests and the ethical problems that would have been presented if Illinois Founders would have undertaken the defense of the defendants, the insurer's failure to defend should not estop it from raising the defense of noncoverage in the garnishment action." (74 Ill. 2d 132, 155, 384 N.E.2d 335, 345.) The supreme court further determined that Illinois Founders was not collaterally estopped from asserting its defense due to the default judgment.

Finally, the court examined the effect of Paul's battery conviction. After noting that a number of courts have held that a criminal conviction conclusively establishes the facts upon which it is based, the court

decided to follow the majority position which permits the use of criminal convictions as *prima facie* evidence of the underlying offense. The court stated:

"The court in the criminal case adjudicated the conduct of defendant Ben Paul to constitute battery. We noted above the holdings of the Oregon court in *Casey*, and the Pennsylvania court in *Hurtt* that proof of a criminal conviction is conclusive proof of the facts on which it is based. We think the preferred rule is that stated by the Appellate Court for the Second District in *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 203 N.E.2d 160, which held proof of a conviction to be admissible in a civil case as *prima facie* evidence. We are not concerned here with the effect of a guilty plea. This approach preserves the opportunity to rebut the factual basis of the conviction insofar as those facts are applicable to the civil proceeding. Also, it does not conclusively establish that there was no duty to defend as the Oregon court held in *Casey*. *In our case, the evidence of the defendant Paul's conviction of battery should have been admitted in the garnishment proceeding as prima facie evidence that his striking of the plaintiff constituted a battery.* (Emphasis ours.) (74 Ill. 2d 132, 151, 384 N.E.2d 335, 343.)

The court remanded the case to the trial court.

On February 27, 1979, a default was entered against Illinois Founders. On April 24, 1979, the court vacated the default on Illinois Founders' motion which asserted that its counsel had not received notice of the hearing. On the next day, Illinois Founders filed a "Defense to Garnishment, Complaint and Summons." (It appears from our record that this was the first response to the garnishment affidavit filed by Founders.)

The garnishment hearing was held on May 1, 1979. Thornton offered into evidence the insurance policy between Ben Paul and Illinois Founders, and asked the court to take judicial notice of the prior proceedings. The trial court admitted the policy and stated that admissions made in the prior proceedings would be admitted as rebuttable evidence. Thornton then rested.

Ben Paul was called as a witness for Illinois Founders. On the night of December 31, 1972, Wayne Thornton and four others were drinking in Ben's Den and became rowdy. He asked them to quiet down, and after the fourth warning he asked Thornton to leave. Thornton refused and said he was going to "whip" Paul. Paul came around the bar with a stick, hoping it would coerce Thornton to leave. Thornton refused and a fight ensued, culminating with Paul hitting Thornton with the stick. Paul stated that he had hoped he didn't have to use the stick but when he did, he intended to hit Thornton. At the time of the incident, Paul was 5 feet 6½ inches tall and weighed 170 pounds. Thornton was about 6 feet 2 inches

tall and had a reputation as a good fighter. Paul was originally charged with aggravated battery but this was later changed to battery. Paul was ultimately convicted of the battery and paid a fine.

On cross-examination, Paul stated that all five of the men were taller than he and weighed approximately 230 pounds. They were rowdy in that they were scuffling, inciting fights, and throwing beer bottles and glasses.

Wayne Thornton was called under section 60. He stated that he arrived at Ben's Den at approximately 2 a.m. on January 1, 1973. He and a few other friends were "messing around a little bit back at the pool table" when Paul asked them to quiet down or leave. Thornton approached the bar and the man seated next to him started to fall off the stool, knocking off a bunch of beer bottles. Paul then told him, Thornton, to leave. Thornton refused to leave until his friends left. He thought Paul struck him with a pool cue. Illinois Founders then rested.

Thornton called a number of witnesses on rebuttal. Judge Luther Dearborn identified docket entries he made on January 17, 1973. They reflected that defendant Paul was found guilty of battery after the Assistant State's Attorney and his counsel related the facts of the incident by means of a stipulation. On the basis of the stipulated facts, the court found Paul guilty.

Leon Zanoni stated that he represented Paul on the criminal charge. On January 17, 1973, he negotiated with the State's Attorney's office a stipulation of facts for the criminal case. This procedure was used so that a guilty plea could not be used as an admission in a civil suit and to obtain conviction of a misdemeanor rather than a felony.

Patrick Dawson testified that he accompanied Thornton on the night in question. They had attended a party and Thornton had several drinks. In the several hours they were at Ben's Den, they started off with beers and moved to whiskey and water. Dawson was 6 feet tall and weighed 245 pounds. The others were 6 feet 1 inch, 230 pounds, 5 feet 5 inches tall, 180 pounds; and 5 feet 11 inches, 165 pounds. Paul had asked them to leave several times.

On cross-examination, Dawson stated that Thornton and Paul got into an argument and Paul picked up something which looked like the bottom of a pool cue. Paul then came around the bar and took a swing at them, hitting Thornton. Dawson stated that if he owned the business he would have wanted the group to get out but he didn't know if he would have used that much force.

During arguments, counsel for Illinois Founders asserted first that the incident was not covered under the policy since it did not constitute an occurrence under the policy. It was also argued that the actions of Paul constituted a battery under the policy exclusion.

On June 18, 1979, the trial court entered its first order. The trial court

initially noted the supreme court's declaration that the conviction was admissible as *prima facie* evidence. After examining the facts surrounding the conviction, the trial court declared:

> "that the proceedings which resulted in Ben Paul's conviction of battery were essentially equivalent to a judgment of conviction upon a negotiated plea of guilty to a lesser included offense.
>
>     * * *
>
> The mandate of the Illinois Supreme Court directs this court to consider only whether the defense of non-coverage that the defendant Paul's conduct constituted a battery, could be established. The cases seem to limit explanations concerning criminal convictions to the reasons why the defendant decided to plead guilty (or in this case, to stipulate to facts establishing guilt). The cases appear not to permit the defendant to offer an explanation in the nature of justification, self-defense or excuse. Since such explanations are impermissible, and the other defense of non-coverage that the Defendant Paul was engaged in acts 'in connection with the prevention or suppression of such assault and battery' is beyond the express terms of the mandate, the testimony of the plaintiff, the plaintiff's friends and the Defendant Paul relative to the plaintiff and his friends fighting and damaging property in Ben's Den and the defendant's attempt to abate such activities is inadmissible and ordered stricken.
>
> The record in this garnishment hearing, purged of inadmissible testimony relative to justification and the activities of the defendant to suppress assault and battery, does establish an intentional striking of the plaintiff by the Defendant Paul and the injury of the plaintiff. Thus, even though the Defendant Paul's conduct constituted negligence, there is also sufficient evidence that it constituted the intentional tort of battery which is excluded from coverage under the policy."

In a subsequent order dated June 29, 1979, the trial court awarded Illinois Founders $3,169.53 as costs incurred in the supreme court on the prior appeal.

Thornton now appeals both orders. He claims that the trial court erred in *sua sponte* striking evidence presented to rebut Illinois Founders' *prima facie* defense and that the award of costs by the trial court was unauthorized.

■■ We agree with both contentions, and thus we reverse.

The supreme court declared that the conviction in this case was admissible as *prima facie* evidence. The court also stated that it was not concerned with the effect of the guilty plea. (74 Ill. 2d 132, 151, 384 N.E.2d 335, 343.) Implicit in this rationale is a determination that Paul's

conviction did not result from a guilty plea. Thus, the trial court erred in striking the evidence.

■■ Additionally, a conviction following a bench trial on stipulated facts is not the equivalent of a guilty plea. This is illustrated by this court's decision in *People v. Fair* (1975), 29 Ill. App. 3d 939, 332 N.E.2d 51. In *Fair*, the defendant was convicted of armed robbery following a bench trial. At trial, the defendant stipulated to the prosecution's evidence and presented no evidence of his own. On appeal, he argued that his conviction should be reversed since his stipulation to facts was tantamount to a plea of guilty, thus entitling him to admonitions under Supreme Court Rule 402. This court rejected the defendant's argument and affirmed. In so doing, we distinguished between cases where defendant stipulates to his guilt or that the evidence was sufficient to establish guilt, and situations where a judge determines guilt based upon stipulated facts. In the former case, it has been held that the stipulation was the equivalent to a plea of guilty requiring admonitions. (*People v. Stepheny* (1974), 56 Ill. 2d 237, 306 N.E.2d 872; *People v. Smith* (1974), 59 Ill. 2d 236, 319 N.E.2d 760.) Where, as here, the defendant merely stipulates to facts and the judge determines guilt, no admonitions are required.

Even if we were to agree with the trial court that the conviction resulted from a guilty plea, our result would be the same. In its order, the trial court declared that "Illinois courts have held that it was not erroneous for the trial court to refuse to admit testimony in explanation of a plea of guilty to battery by proving justification, self-defense, or excuse. *Galvan v. Torres* (1956), 8 Ill. App. 2d 227, 131 N.E.2d 367." A close examination of this portion of the *Galvan* decision reveals, however, that the court was specifically limiting that portion of its decision to the pleadings in that case. 8 Ill. App. 2d 227, 233, 131 N.E.2d 367.

The situation presented to this court is sufficiently different from the *Galvan* case to declare that decision inapplicable. In *Galvan*, the defendant to the criminal charge was also the defendant in the civil action. In the instant case, however, the plaintiff Thornton was not the criminal defendant. The effect of the trial court's ruling is to bind Thornton to Paul's plea.

Illinois Founders also argues that even if this court should decide that the evidence was erroneously stricken, we should still affirm. Illinois Founders first contends that the event did not constitute an "occurrence" under the policy. Additionally, it claims that plaintiff failed to produce sufficient evidence to establish either self-defense or justification.

On the first argument, Thornton asserts that Illinois Founders is making its claim for the first time on appeal and thus the question is not properly before this court. Our examination of the record reveals,

however, that the same position was advanced by Illinois Founders' counsel in closing argument on the hearing following the supreme court's remand.

■ There is some question initially whether the trial court is authorized to entertain such an argument. As a general rule, the trial court is bound by the decision and the mandate of the appellate court. (*Fiore v. City of Highland Park* (1968), 93 Ill. App. 2d 24, 235 N.E.2d 23, *cert. denied* (1969), 393 U.S. 1084, 21 L. Ed. 2d 776, 89 S. Ct. 867.) Where the directions of the reviewing court are specific, a positive duty devolves on the trial court to which the cause is remanded to enter an order or decree in accordance with the directions contained in the mandate. (*Stuart v. Continental Illinois National Bank & Trust Co.* (1979), 75 Ill. 2d 22, 387 N.E.2d 312, *cert. denied* (1979), ___ U.S. ___, 62 L. Ed. 2d 56, 100 S. Ct. 87.) Where, however, a court of review does not determine the merits of the cause but merely reverses and remands without specific directions, the judgment of the court below is entirely abrogated, and the cause stands as if no trial had occurred. *People ex rel. Borelli v. Sain* (1959), 16 Ill. 2d 321, 157 N.E.2d 417.

■ We have carefully examined the supreme court's opinion and conclude that Illinois Founders was not precluded from claiming in the trial court that the event was not an occurrence under the policy. In the first garnishment hearing, the plaintiff took the position—and the trial court agreed—that Illinois Founders was precluded from raising any defenses of noncoverage due to its failure to defend. The supreme court basically reversed this finding without ruling on the merits (*i.e.*, whether Illinois Founders could establish noncoverage). While it is clear that the only defense to noncoverage which the supreme court examined was the defense derived from the battery exclusion, the remand does not specifically direct the trial court to consider *only* whether Paul's act constituted a battery. Indeed, the supreme court's opinion almost uniformly remands to determine whether Illinois Founders could establish its defense of noncoverage. The use throughout the opinion of this broad generic term—defense of noncoverage—leads us to believe that Illinois Founders can raise *any* defense of noncoverage including one premised upon the interpretation of the term "occurrence."

Having dealt with the preliminaries at some length, we now consider the marrow of Illinois Founders' claim. The basic argument is that even if the trial court incorrectly determined that Paul's conviction was based on a guilty plea, we should still affirm because the event was not an "occurrence" under the policy. Clearly, this is a question of interpretation of the contract. The trial court's order leaves little doubt that it did not consider this question.

In general, insurance policies must be construed and enforced as

made by the parties. (*Schewe v. Home Insurance Co.* (1980), 80 Ill. App. 3d 829, 400 N.E.2d 501.) The fundamental inquiry is the intent of the parties to the contract. If no ambiguity appears, the policy is to be read according to the plain and ordinary meaning of its terms. (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 376, 400 N.E.2d 921.) In order to ascertain the intent of the parties, however, a court should not examine the policy in a vacuum but should look to the circumstances surrounding the issuance of the policy, such as the situation of the parties and the purpose for which the policy was obtained. *Dora Township.*

The initial inquiry is whether the contract is ambiguous. The policy in question covers losses sustained as a result of an occurrence on the insured premises. "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured * * *." The word "accident" is clearly the operative word in the definition.

Illinois Founders asserts here that since Paul intended to strike the plaintiff—even though justified—the act would not constitute an "occurrence." If this is true, then any intentional or wilful act would not be covered by the policy. One thus wonders why there is a need for a battery exclusion since a battery necessarily involves an intentional act. Given the broad reading of "occurrence" which Illinois Founders now urges, the battery exclusion removes from coverage something which was never included.

■■ We find that the terms of the policy are ambiguous. While there was a brief mention of this question at the prior hearing, no evidence was presented on this point and the trial court did not mention it in his order. Since we are remanding on the question of justification, the parties are free to present evidence on this question.

■■ In a like manner, we cannot accept Illinois Founders' argument that plaintiff has failed to establish justification. The trial court specifically declined to consider this evidence. Our review of the testimony, however, leads us to believe that ample evidence was presented so that the trial court, in its function as a factfinder, could have found that Paul's use of force was either justified or in self-defense. The testimony indicates that Paul, who was not large in stature, was trying to maintain order in his establishment in the face of larger individuals who had diligently imbibed and were threatening to "whip" him. We refuse to speculate as to the finding which the trial court would have made had he properly considered the evidence.

■■ Thornton also claims that it was error for the trial court to award $3,169.53 to Illinois Founders as costs on appeal, since costs must be assessed in the court in which they are incurred. (*People v. Nicholls*

(1978), 71 Ill. 2d 166, 374 N.E.2d 194.) Both parties have apparently failed to discover that the question is controlled by statute. (Ill. Rev. Stat. 1977, ch. 33, par. 25.) The *Nicholls* case specifically states that this statute places the duty of assessing costs upon the clerk of the reviewing court. Thus, the trial court was not authorized to assess costs.

Having reached this determination, we need not decide plaintiff's final contention—that costs for the appeal bond are not properly taxed as costs.

The decision of the trial court is hereby reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

WEBBER, J., concurs.

Mr. JUSTICE GREEN, concurring in part and dissenting in part:

I agree with the majority's well-reasoned conclusions that (1) the trial court should not have stricken evidence rebutting Illinois Founders' *prima facie* battery defense, and (2) the question of whether the event in question constituted an "occurrence" within the meaning of the policy was also before the trial court on remand. I conclude, however, that the evidence, including that which was improperly stricken after the conclusion of the hearing, showed, as a matter of law, that the liability insurance policy did not cover the event. For this reason, I would affirm the order finding Illinois Founders not liable in garnishment.

The evidence showed conclusively that Ben Paul intentionally hit plaintiff with the hard wooden part of an object that appeared to be a cue stick. The majority does not dispute that this act would have constituted a battery unless justified. The situations which would have justified the conduct are set forth in article 7 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 7—1 to 7—14). If Paul committed a battery, the supreme court's decision in this case would have required the trial court to find the exclusionary clause of the policy to prevail. If, on the other hand, Paul's conduct was justified, he did not commit a tort. He could not have been held to be merely negligent in his appraisal of the situation prior to his striking plaintiff, for the reasonableness of that appraisal determines whether this conduct was justified under article 7. Thus, in determining whether the policy would cover the situation if Paul struck plaintiff without committing a battery, we are required to determine whether the policy covered an event in which no tort was committed by the insureds.

The policy purported to give coverage for liability arising from an

"occurrence" which was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured \* \* \*.*" (Emphasis added.) The plain meaning of the definition would seem to be such that an intentional striking of another by an insured or his servant would not be covered. However, a number of cases have held that an assault, in the broad sense of assault and battery being one, is an "accident" within the meaning of liability policies. In such cases, the question of whether the event is to be viewed from the standpoint of the insured or the victim is deemed to be crucial. (Annot., 72 A.L.R.3d 1090, 1100 (1976).) Here, if the event is viewed from the standpoint of the insured, Paul, as the policy directs, his conduct was intentional and not an "accident."

The theory that the event may be examined from the standpoint of the injured party started in this State with the decision in *E. J. Albrecht Co. v. Fidelity & Casualty Co.* (1937), 289 Ill. App. 508, 7 N.E.2d 626. There, servants of the insured had intentionally and without sufficient provocation shot a third person. The liability insurance policy in issue covered accidents, and there was no exclusionary clause for battery. The court held that as the shooting was without provocation, it would be viewed from the standpoint of the injured party, and from his standpoint it was an accident. The case was cited with approval in *Hawthorne v. Frost* (1952), 348 Ill. App. 279, 108 N.E. 816, where an unprovoked attack by a cab driver against a passenger was deemed to be accidental, and in *Scott v. Instant Parking, Inc.* (1969), 105 Ill. App. 2d 133, 245 N.E.2d 124, where willful and wanton conduct of an elevator operator was held to be an accident invoking coverage.

The rationale of *E. J. Albrecht Co.*, its progeny and authority from other jurisdictions, shows a policy of construing liability policies in such a way as to give protection to injured parties innocent of provocation. However, the supreme court has held that the battery exclusion is valid and excludes coverage if a battery was committed. If a battery was not committed, the justification for Paul's acts must have arisen from provocation by plaintiff, the injured party. Thus, the rationale of *E. J. Albrecht Co.* would not be applicable, and the question of intent would be viewed from the standpoint of the insured even without the direction to do so in the policy's definition of the word "accident." Regardless of whether or not Paul committed a battery, I find no basis for coverage under the evidence here.

The theory that the question of intent be determined from the standpoint of an injured party innocent of provocation is likely the reason for the insurer placing a battery exclusionary clause in the policy in addition to defining the term "accident" in such a way that it did not include an event resulting from intentional conduct. Many batteries are

unprovoked, and the insurer was likely concerned that they would be deemed accidents even under policies where, as here, the question of intent was directed to be determined from "the standpoint of the insured."

As the question of whether the event was an "occurrence" constituting an "accident" was before the trial court on remand, the parties had an opportunity to present any admissible evidence on the question. Under the record here, I consider the interpretation of the policy to be a question of law as it was in *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 400 N.E.2d 921. Thus we are not required to remand the case to the trial court, although it did not pass on this issue. I would avoid further proceedings there by not doing so.

I agree that the order taxing the premium for Illinois Founders' supersedeas bond as costs should be reversed.

Accordingly, I would affirm the order on the garnishment proceeding and reverse the order taxing costs, all without remandment.