ANNA MARIA PEARSON

*v.*

CHRISTIAN H. HANSON *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 10, 1907.*

1. WILLS—*object of postponing enjoyment is a test for determining whether estate is vested or contingent.* The testator's object in postponing the enjoyment of an estate, as appears from the will, is a test for determining whether the estate is vested or contingent; and if it appears such object is for reasons personal to the devisee or legatee the estate is contingent, but if for the convenience of the fund the estate is vested.

2. SAME—*what does not show that postponement of enjoyment was personal to the devisee.* The mere fact that two of the four residuary devisees were under permanent disability, one being distracted and the other deaf and dumb, is not, of itself, any evidence that the testator's object in postponing the distribution of the estate was for reasons personal to the legatees.

3. SAME—*when estate is vested.* Under a will creating a trust for the benefit of certain named persons, who are to receive equal shares of one-half of the income of the residuary estate annually

and at the end of ten years one-half of the principal fund, the remaining half to be kept in trust and invested with the accumulations for ten years more and then paid over to such persons in equal shares, and if any of such persons die during the trust period, either before or after the time of the first distribution, his share to be paid to his heirs-at-law, each devisee so named takes a vested, devisable interest, which will pass under his will though he dies before the time for distribution.

4. TRUSTS—*the extent of testator's power to create spendthrift trust.* A testator, in creating a spendthrift trust, can do no more than exempt the devise from the creditors of the devisee, but he cannot devise the estate and at the same time exempt it from the laws of devise and alienation.

CARTWRIGHT and SCOTT, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. G. A. CARPENTER, Judge presiding.

This is a bill filed to obtain a construction of the last will of Andrew Peterson. Only legal questions are involved. The will disposed of both real estate and personal property, hence the appeal is to this court. The testator died January 19, 1899, and his will, which was dated August 4, 1898, was admitted to probate February 23, 1899. The testator left neither widow nor lineal descendants. His nearest relatives and principal beneficiaries under his will were two nephews, Harold P. Pearson and James A. Peterson, and two nieces, Nina M. Pearson and Josephine Kaywood (*nee* Peterson.) The only clauses of the will necessary to be considered in determining the questions are the following:

"*Paragraph 1*—I give, devise and bequeath the death membership arising from my membership of the Chicago Stock Exchange, also all the remainder of my estate, real, personal and mixed, of which I may die seized or possessed, to the State Bank of Chicago, to have, possess and hold the same, to it, its successor or successors, as hereinafter provided, from the date of my decease until the final distribution thereof as hereinafter provided, in trust, nevertheless,

for the uses and purposes and upon the trusts and subject
to the provisions hereinafter expressed and declared, that
is to say:

"(1) To pay all my just debts and funeral expenses;
and in this connection it is my desire that my remains be
buried in my lot in Oakwood cemetery, next to those of my
deceased beloved wife, Josephine E. Peterson; that a head-
stone similar to the one upon my wife's grave be erected
upon my grave and that my name be inscribed upon the
monument on the said lot; that my said trustee expend the
necessary money for keeping in good order the graves of
my said wife and of myself and also my said cemetery lot.

"(2) To have, hold, manage, possess, collect, invest and
re-invest, upon the advice and under the direction and con-
trol of my executors, their survivor or survivors, successor
or successors, all of my said estate, real, personal or mixed;
to collect the issues and profits thereof; to keep the real es-
tate insured and in repairs.

"(3) To pay out of said trust estate, as soon as my ex-
ecutors, their survivor or survivors, successor or successors,
find that there is sufficient cash on hand in the said trust es-
tate for such purpose, the special bequests shall be paid in
their alphabetical order.

"(4) During the first ten (10) years after my death to
pay once a year, and upon the date of the anniversary of
my death unless it should fall on Sunday, and in that event
on the Monday succeeding, one-half (½) of the net amount
of all annual issues and profits of the said trust estate to
the four children of my deceased brother, Nils P. Pearson,
namely, Harold P. Pearson, Nina M. Pearson, James A.
Peterson and Mrs. Josephine Kaywood, (*nee* Peterson,)
share and share alike. If any of the said four legatees
should die during the said ten (10) years, then the share
of the deceased of the annual issues and profits hereinbefore
provided shall be paid to the heir or heirs-at-law of such
deceased legatee. I direct that the remaining one-half (½)

of the net amount of the said annual issues and profits shall, during the said ten (10) years, be added to the principal of the said trust fund for re-investment, in the manner as directed in 2 of this first paragraph of this my last will and testament, in accumulation of said trust fund. * * *

"*Paragraph 2*—I direct that at the expiration of ten (10) years from my death one-half (½) of the trust fund created by the first paragraph of this my last will and testament shall be distributed and paid to the four children of my deceased brother, Nils P. Pearson, namely, Harold P. Pearson, Nina M. Pearson, James A. Peterson and Mrs. Josephine Kaywood, (*nee* Peterson,) share and share alike; but if any of the said four legatees be then dead, then and in that event the share of the deceased in this distribution shall be paid to his or her heirs-at-law.

"*Paragraph 3*—I direct that the remaining one-half (½) of the trust fund created by the first paragraph of this my last will and testament, left after the distribution of the one-half (½) as provided by the second paragraph hereof has taken place, shall continue to remain with and be held by my said trustee, the State Bank of Chicago, in trust, nevertheless, for the uses and purposes and upon the trusts and subject to the provisions hereinafter expressed and declared, that is to say:

"(1) To have, hold, manage, possess, collect, invest and re-invest, upon the advice and upon the direction and control of my executors, their survivor or survivors, successor or successors, all of the said trust fund created by this third paragraph of this my last will and testament.

"(2) To collect, invest and re-invest all the issues and profits upon the trust fund created by this third paragraph, such issues and profits to be added to this trust fund for its accumulation.

"(3) At the expiration of ten (10) years from the distribution, as provided by paragraph 2 of this will, which will be equal to twenty (20) years after my death, I direct

that the trust created by this third paragraph of my will shall be dissolved, and that the remainder of my estate shall be distributed as provided by paragraph 4 of this my last · will and testament.

"*Paragraph 4*—At the dissolution provided by 3 of paragraph 3 hereof of the trust created by said paragraph 3, I direct that the remainder of my estate shall be divided, distributed and paid to the four children of my deceased brother, Nils P. Pearson, namely, Harold P. Pearson, Nina M. Pearson, James A. Peterson and Mrs. Josephine Kaywood, (*nee* Peterson,) share and share alike, but if any of my said four legatees die before such final distribution, then the share of the deceased shall be paid to his or her heirs-at-law. All distributions provided for by the second and fourth paragraphs of this my last will and testament shall be· *per stirpes,* not *per capita.*"

On April 23, 1906, Harold P. Pearson, one of the beneficiaries, died, leaving a will, dated July 28, 1898, devising all his property, real and personal, to his mother, with a devise over to his sister Nina Pearson in case his mother did not survive him. Harold P. Pearson having died before the first period of distribution under paragraph 2 of the will of Andrew Peterson, a question has arisen whether the share of Harold P. Pearson in the annual distribution of accumulations under clause 4 of paragraph 1, and his one-fourth part of the one-half of the *corpus* distributable at the end of ten years under paragraph 2, and his one-fourth interest in the final distribution at the end of twenty years to be distributed under clauses 3 and 4 of paragraph 3, shall be paid to Anna Maria Pearson as sole legatee under the will of Harold P. Pearson, or paid to the legal heirs of said Harold P. Pearson. Anna Maria Pearson contends that under the will of Andrew Peterson her son Harold P. Pearson took a vested and a devisable interest, which passed under his will to her, while the heirs of Harold contend that no interest vested in the devisees under Peterson's will until the ex-

piration of ten years, when one-half vested and the remainder of the estate did not vest until the expiration of twenty years from Peterson's death. The circuit court construed the will in accordance with appellees' contention, and ordered the trustee to pay Harold's share, both in the income and the principal, to the legal heirs of Harold P. Pearson. Anna Maria Pearson appeals to this court and assigns error upon the construction given to the will of Andrew Peterson.

WOLSELEY & BARKER, (HENRY W. WOLSELEY, of counsel,) for appellant.

JAMES A. PETERSON, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The court below held that the interest of the devisees under the will of Andrew Peterson was contingent on the devisees being alive at the periods of distribution, and that Harold having died before either of such periods was reached had no devisable interest, hence his mother took nothing under his will. Cases of a present vesting of title where the enjoyment in possession is postponed are often difficult to distinguish from cases where the title is only to vest on some future contingency which may or may not happen. In determining this question the legally expressed intention of the testator as found within the four corners of the will must be the chart and guide of the court. That this great, fundamental rule may prevail and the property of the testator take the posthumous course intended by the owner other rules are made and unmade. One test given for the decision of the question is to consider the object of the testator in fixing upon a future period for the devisee to come into the enjoyment of the estate. If it appears that the controlling purpose was personal to the devisee then the estate will not vest until the time appointed, and is contingent upon the devisee being alive when the time desig-

nated is reached. The leading case in England on this subject is *Leake* v. *Robinson,* 2 Mer. 363, which is extensively quoted by this court in *Howe* v. *Hodge,* 152 Ill. 252, (see p. 275.) Many other cases may be found applying this test. The other branch of the rule is, that if the payment was postponed for the convenience of the property or fund then there is an immediate vesting of the title and the postponement merely respects the time of enjoyment, even though there be no other gift than the general direction to pay or distribute at the appointed time.

The distinction which we have above sought to point out will be made clear by a quotation from *Scofield* v. *Olcott,* 120 Ill. 362. On page 373 this court said: "But even though there be no other gift than in the direction to, pay or distribute *in futuro,* yet if such payment or distribution appear to be postponed for the convenience of the fund or property, as where the future gift is postponed to let in some other interest, for instance, if there is a prior gift for life or a bequest to trustees to pay debts, * * * the gift in remainder vests at once and will not be deferred until the period in question. But where the payment is deferred for reasons personal to the legatee the gift will not vest until the appointed time. (2 Jarman on Wills,—R. & T.'s ed.— 458; Theobald's Law of Wills, 412.) Thus, a gift to a person if or when he shall attain a certain age will not vest until the age is attained. (Idem.) In other words, if the reason for the postponement is the position of the *fund,* the bequest in remainder vests at once; but if it is the position of the *legatee,* the remainder is contingent.—*In re Bennett's Trusts,* 3 Kay & J. 280."

The case at bar was heard on the bill, answer and a stipulation. The stipulation recites that "Josephine Kaywood is a distracted person, and that Nina M. Pearson Olson is married and is deaf and dumb from birth." The unfortunate condition of two of the devisees under the will is introduced for the purpose of supplying a basis for the claim

that the testator, in postponing the period of enjoyment, did so out of considerations personal to the unfortunate devisees. These facts being in the record by agreement, no question is made as to the admissibility of circumstances outside the will itself to discover the intention of the testator. Conceding the right of the parties to have these extrinsic circumstances considered, we fail to see any force in them. There is no reason to suppose that the testator hoped, believed or anticipated that the condition of these devisees would be any different at the end of the ten or twenty years than at the date of his death. Their incapacity to manage the estate, if it existed, was of a permanent character, and can afford no rational explanation why the testator fixed a future date for the enjoyment of the devise. Again, the testator limits the time of enjoyment of the other two devisees, as to whom this argument does not apply, to the same time and manner as to the two unfortunate ones. If any argument can be drawn from these extrinsic facts, it seems to us quite as reasonable to conclude that the unfortunate condition of these two devisees, and their inability to accumulate property and provide for themselves and their heirs, may have had some influence on the testator in leading him to vest in them a portion of his estate absolutely. But we do not regard this matter as having any controlling weight either way. The law favors the vesting of estates, and in cases of doubt the construction will be adopted which leads to that result. An estate is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment. It carries with it the seizin in law or in equity, according to the character of the estate, and takes effect in interest and right immediately on the death of the testator, although it may not take effect in possession and enjoyment until the death of a life tenant or the termination of another particular estate. (*Scofield* v. *Olcott, supra.*) In the case at bar there is nothing dubious or uncertain about the devise. The testator has with un-

usual clearness expressed the purpose to give the residue of his estate to the four persons named, and it is specially provided in each clause referring to the distribution, that the share of any of the devisees who may die before the time appointed for the several distributions shall be paid to the legal heirs of such deceased devisee. The expressions used in the different clauses are not identical, but there is no indication that the testator meant to convey a different meaning by the slight changes to be found in the different clauses. In our opinion the testator intended to vest the title in fee in each of the devisees to an equal share of the residue of his estate, and the several clauses providing for the legal heirs to take in case any devisee should die, is only a further manifestation that the interest intended to pass was the absolute title and right, complete and perfect in all respects, except the enjoyment in possession was postponed for a limited but certain and fixed time.

It is said by the appellees that the devise here should be held to be a spendthrift trust. There is nothing in the will that has any resemblance to a spendthrift trust, and if there were, we know of no decision that has gone to the extent of holding that a testator can do more than to exempt the devise from the rights of creditors of the devisee. That a devise can be made under the rule that will exempt the estate from the creditors of the devisee has been established in this State ever since the case of *Steib* v. *Whitehead,* III Ill. 247, was decided; but to hold that a testator can devise an estate and at the same time exempt such estate from the law of devise and alienation, is to say that a testator can give and not give, in the same breath. *Steib* v. *Whitehead, supra; Johnson* v. *Preston,* 226 Ill. 447.

Our conclusion is that the estate vested in the devisee upon the death of the testator and that the estate was a devisable interest, hence under the will appellant succeeded to all the rights, title and interest of her deceased son, both as to the *corpus* and the income thereof.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded.*

CARTWRIGHT and SCOTT, JJ., dissenting.