(No. 50788.—

ELIZABETH B. STUART *et al.,* Appellants, v. CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.,* Appellees.

*Opinion filed Jan. 26, 1979.—Rehearing denied March 30, 1979.*

UNDERWOOD and MORAN, JJ., dissenting.

William T. Hart, Allan Horwich, and Joseph P. Collins, of Schiff, Hardin & Waite, of Chicago, for appellant Elizabeth B. Stuart.

Samuel W. Witwer, J. Alfred Moran, and Samuel W. Witwer, Jr., of Witwer, Moran, Burlage & Atkinson, of Chicago, for appellant Illinois Institute of Technology.

Roger W. Barrett and Franklin P. Auwarter, of Mayer, Brown & Platt, of Chicago, for appellee Continental Illinois National Bank & Trust Co. of Chicago.

Willard L. King, of Chicago (King, Robin, Gale & Pillinger, of counsel), for appellee Chicago Historical Society.

Thomas J. Russell, of Mitchell, Russell & Kelly, of Chicago, for appellee DePaul University.

Charles E. Herzog, of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, for appellee University of Chicago.

Michael C. Weston, of the Office of the University Attorney, Northwestern University, of Evanston, for ap-

pellee Northwestern University.

William H. Oswald, of the Office of General Counsel, Loyola University of Chicago, of Chicago, for appellee Loyola University of Chicago.

Christopher W. Wilson, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee Blackburn College.

Vernon T. Squires, of Wilson & McIlvaine, of Chicago, for appellees Field Museum of Natural History, The Orchestral Association, Children's Memorial Hospital and Chicago Boys Clubs.

Raymond Goldfarb, of Williams, Manos, Rutstein, of Goldfarb & Sharp, Ltd., of Chicago, for appellee Mercy Hospital and Medical Center.

Otis H. Halleen, of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee Michael Reese Hospital and Medical Center.

James J. McClure, Jr., of Gardner, Carton & Douglas, of Chicago, for appellee Rush-Presbyterian-St. Luke's Hospital.

Lee A. Freeman, Sr., of Freeman, Freeman & Salzman, of Chicago, for appellee Lyric Opera of Chicago.

Louis M. Rundio, Jr., of McDermott, Will & Emery, of Chicago, for appellee YMCA of Metropolitan Chicago.

Arthur Cichorski, of Davis, Dietsch & Ryan, of Chicago, for appellee The Salvation Army—Greater Chicago Unified Command.

Stephen L. Schar, of Aaron, Aaron, Schimberg & Hess, of Chicago, for appellee The American Red Cross.

John Angle, of Kirkland & Ellis, of Chicago, for

appellees Boy Scouts of America and Rehabilitation Institute.

Hugh King, of Jenner & Block, of Chicago, for appellee Girl Scouts of Chicago.

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal is a sequel to *Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502. Upon remand by that opinion, Elizabeth Stuart and the Illinois Institute of Technology (hereinafter IIT) sought to recover "increases, gains, income or profits" accumulating after June 30, 1971, on the $3.5 million granted IIT by the earlier opinion of this court. The circuit court of Cook County dismissed the petition and ruled that only the $3.5 million should be distributed to IIT.

The primary issue posed now by Miss Stuart and IIT is whether our earlier opinion gave IIT a right to interest, dating from June 30, 1971, on its grant of $3.5 million. We hold that the $3.5 million grant is the total amount to which IIT is entitled.

The protracted litigation involving the will of Harold Stuart has been recounted in earlier proceedings (see 68 Ill. 2d 502; *Northern Trust Co. v. Continental Illinois National Bank & Trust Co.* (1976), 43 Ill. App. 3d 169), and this particular appeal does not require a complete restatement of those facts. Harold Stuart died on June 30, 1966, leaving a substantial estate. His will provided for the creation of a large charitable trust, with his two sisters and the Continental Bank as trustees. The trustees had the power to designate the charities to whom the assets of the estate would be distributed. Under the provisions of that trust, the bank could veto any distribution ordered by the two sisters. The trustees were unable to agree on a distribution plan, so the circuit court was called on to

establish a plan of distribution. The court adopted almost the entire plan submitted by the bank. The two sisters had requested that three-fourths of the trust go to IIT, while the plan approved by the court called for much wider distribution.

In our earlier opinion we examined three major issues relevant to this appeal. First, we found that the bank had wrongfully distributed $250,000 to an unqualified charity, and we ordered the money returned, with interest, to the trust. Second, we found that the bank and the two sisters had both designated an additional distribution of $3.5 million to IIT. We ordered disbursement of that amount to IIT. Third, we found that any excess funds should be distributed according to the plan as set forth by the circuit court. Our opinion had, accordingly, dealt with all funds available for distribution. We remanded that case for entry of appropriate orders.

On the remand, Miss Stuart and IIT filed a petition for accounting which asked the bank to supply information on all increases, gains, income or profits, accruing after June 30, 1971, on the $3.5 million, and asked that an order be entered directing the bank to distribute that money to IIT. The circuit court dismissed that petition and a direct appeal under Rule 302(b) (58 Ill. 2d R. 302(b)) was granted.

In the earlier opinion of this court, it was clearly stated:

"We hold, therefore, that upon remand an order be entered directing that an additional $3.5 million of the estate be distributed to IIT." (*Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 536.)

It is impossible to negate every possible issue in an opinion and therefore the rule is that "[w]here *** the directions of a reviewing court are specific, a positive duty devolves upon the court to which the cause is remanded to enter an

order or decree in accordance with the directions contained in the mandate. Precise and unambiguous directions in a mandate must be obeyed." (*Thomas v. Durchslag* (1951), 410 Ill. 363, 365.) While we did not specifically *exclude* an increase of the IIT grant in the earlier opinion, neither did we *include* it, and we specifically directed that $3.5 million be distributed to IIT. In contrast, our earlier opinion specifically provided for interest on the $250,000 the Continental Bank would be required to return to the trust (68 Ill. 2d 502, 526). The circuit court followed our instructions and was correct in dismissing a claim for additional funds.

Our earlier opinion effectively distributed all the proceeds of the Stuart trust. On that appeal, IIT contended that the trial court, in adopting its plan for distribution, had erred in not including IIT in the *pro rata* distribution of $6.5 million of the funds in excess of the amount required to satisfy all specific grants. Monies in excess of the specific grants were ordered to be distributed to designated group 1 and group 2 charities, as established in the distribution plan, on a *pro rata* basis. We specifically limited IIT's grant to $3.5 million by holding that they were to receive none of the excess funds. As we stated, "IIT is the only other charity which is precluded from taking a *pro rata* share of the excess funds, and the court [the initial trial court] could well have concluded that IIT's share of the estate was already of sufficient size." (68 Ill. 2d 502, 538.) The $6.5 million included interest or earnings that could well have been attributed to the $3.5 million which this court held should be distributed to IIT. When the matter was presented to the circuit court for a plan of distribution, the $3.5 million was not a segregated fund but was a part of the total assets of the estate, for which the court was asked to form a plan of distribution. Plaintiffs had, at one time, stated in writing that IIT should receive $3.5 million in addition to that which had

previously been distributed to it. However, when that amount was agreed to by the bank, plaintiffs insisted that IIT should receive three-fourths of the total estate. Although in our previous opinion we characterize the bank's action of withdrawing its proposal of the additional grant as "arbitrary and unreasonable" (68 Ill. 2d 502, 536), it should be noted that, at the time of the withdrawal, plaintiffs did not agree to a distribution to IIT of only an additional $3.5 million. The court was then called upon by *both* parties to formulate a plan of distribution of the entire fund. This the court did, excluding IIT from any share in the accumulated excess. Our opinion stated that we could not say that the circuit court's holding in adopting this plan was inequitable or contrary to the manifest weight of the evidence. The present contention of the plaintiffs is, in effect, asking this court to reconsider at least a part of the distribution plan which we have previously approved.

IIT suggests that our finding that "the circuit court erred in its denial of the relief requested by plaintiff IIT in count III" (68 Ill. 2d 502, 533) gave IIT a vested right to the $3.5 million retroactive to June 30, 1971. IIT argues that because it had a vested right to the money, it had a right to the accumulated interest on that money. In particular, it relies on article V(e) of the Stuart will, which provides:

> "[T]he Executors shall, prior to the expiration of such period of five (5) years after my death, select in writing the qualified charitable organizations to take hereunder and the proportion of my estate each such organization is to receive, and the interest of each such charitable organization shall vest at the expiration of such five-year period."

Harold Stuart died on June 30, 1966, thus making June 30, 1971, the date of "vesting."

The term "vest" does not have a single, fixed, clear

and precise meaning. Whether found in a statute or in a document, the word must be construed with reference to, and take its meaning from, the context of the provision where it is found. It may be used "when there is an immediate right to present enjoyment or a present fixed right of future enjoyment" of property. (2 W. James, Illinois Probate Law & Practice sec. 43.74, at 50 (1951). See also *Pearson v. Hanson* (1907), 230 Ill. 610, 617; 92 C.J.S. 1002 (1955).) Once the designation had been made by the Stuart sisters and the bank, the interest became fixed or "vested" and could not be altered by the bank's subsequent withdrawal of the proposal, or by the plaintiffs' rejection of the $3.5 million grant and their demand for a grant to IIT of three-fourths of the estate. However, in the context of the will, the enjoyment of the fixed or vested interest was to be delayed until distribution. Because of the litigation wherein both parties requested the court to approve plans for distribution, the right to the enjoyment of the $3.5 million was delayed until the lower court ordered distribution upon remand. "Vest," as used in the Stuart will, meant only that once the designation had been made, it could not be withdrawn. IIT was given a present fixed right to future enjoyment upon distribution, not a present possessory interest. The vested interest of IIT did not carry with it the right to interest on the amount of the grant from June 30, 1971.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

I believe that it was implicit in our earlier opinion in this case that IIT was entitled to interest on its grant of $3.5 million. In our October 1977 opinion it was determined "that the circuit court erred in its denial of the relief requested by plaintiff IIT in count III of the second

amended complaint." (68 Ill. 2d 502, 533.) While that opinion did not refer specifically to the question of interest on the $3.5 million, the relief requested by plaintiff IIT in count III of its second amended complaint included an amount for "increases, gains, earnings or profits" on the $3.5 million grant. Since the majority opinion concedes that "we did not specifically *exclude* an increase of the IIT grant in the earlier opinion," it would seem more logical to resolve the ambiguity by referring to the pleadings to determine what relief was requested, since we concluded that the circuit court had erred in its denial of the relief requested by IIT.

More fundamentally, however, it seems contrary to logic and reason to declare, on the one hand, that IIT had a vested right to the $3.5 million grant as of June 30, 1971, but on the other hand to deny IIT any right to the interest which accrued on this grant during the subsequent course of this protracted litigation. The result reached by the majority seems especially unsound when one considers article V(e) of the Stuart will, which provides:

> "[T]he Executors shall, prior to the expiration of such period of five (5) years after my death, select in writing the qualified charitable organizations to take hereunder and the proportion of my estate each such organization is to receive, and the interest of each such charitable organization *shall vest at the expiration of such five-year period.*" (Emphasis added.)

Since IIT was selected as a charitable organization to take under the will within the 5-year period immediately following the testator's death on June 30, 1966, its interest "vested" on June 30, 1971, pursuant to the express terms of the will.

Despite this fact, the majority opinion concludes that this vested right only entitles IIT to the principal amount of $3.5 million upon distribution, following the termination of this lengthy litigation. This view is based upon what I believe to be an overly restrictive interpretation of

the word "vest." The majority opinion concludes that IIT's vested interest gave it a "present fixed right to future enjoyment upon distribution" and only guaranteed IIT that once it had been designated as a charitable organization to receive under the will, such designation could not be withdrawn.

I find it difficult to accept such an inequitable construction of the Stuart will. I concede that the word "vest" may have a different meaning depending on its legal context, but it seems to me that there is no basis in the language of the will for the conclusion reached by the majority. On the contrary, I think that a careful analysis of the Stuart will reveals that the testator used the word "vest" in the usual sense of an immediate right to present enjoyment.

Article V(d) of the Stuart will, which the majority opinion fails to discuss, provides as follows:

> "The executors acting as trustees may, in their sole judgment and discretion, accumulate the net income of the trust estate and add the same to principal (*provided the accumulations shall not take place for more than five years*), or may from time to time distribute the net income, or such part thereof, as the trustees in their sole judgment and discretion may deem proper, to such qualified charitable organizations *as the trustees may select.*" (Emphasis added.)

This clause, to me, demonstrates the testator's intent that accumulations of net income may be added to the general residue of the trust estate only for the 5-year period immediately following the testator's death. The only reasonable interpretation of this clause, when read in conjunction with article V(e), is that the testator intended the charitable organizations designated within the prescribed 5-year period to come into present enjoyment and possession of their grants on June 30, 1971. After that date, any accumulation of interest would belong, as of right, to the appropriate designated charity and could not

be added to the general residue of the trust estate.

Clearly, if the executors had been successful in designating the charities to take under the will and the proportion each was to receive pursuant to article V(e), there would be no doubt that under article V(d) any further accumulations of income prior to distribution would accrue to the benefit of the appropriate charity. The fact that the executors failed to reach agreement prior to June 30, 1971, on the charitable organizations, other than IIT, to take under the will should not operate to deprive IIT of interest that it would otherwise have been indisputably entitled to. The prohibition in article V(d) against accumulations of net income subsequent to the "vesting" date of June 30, 1971, reinforces my belief that the testator used the word "vest" to connote present enjoyment and possession, including the right to receive all "increases, gains, earnings or profits" accruing after the vesting date. I would allow IIT interest on the $3.5 million from the date of vesting, June 30, 1971.

MR. JUSTICE MORAN joins in this dissent.