2020 IL App (1st) 191413-U

FIFTH DIVISION
December 31, 2020

No. 1-19-1413

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DANIEL CUEVAS, on behalf of himself and all others similarly situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | |
| FRITZ KAEGI, in his official capacity as Assessor of Cook County[1]; and the DEPARTMENT OF ERRONEOUS EXEMPTION ADMINISTRATIVE HEARINGS, and THE COOK COUNTY ASSESSOR'S OFFICE, | ) ) ) ) ) ) | No. 18 CH 3283 |
| | ) ) ) | Honorable Pamela McLean Meyerson, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held:* The circuit court did not err in dismissing the amended complaint pursuant to section 2-619(a)(4) of the Illinois Code of Civil Procedure on the basis of *res judicata.*

---

[1] Pursuant to section 2–1008(d) of the Illinois Code of Civil Procedure (735 ILCS 5/2–1008(d) (West 2018)) we have amended the caption to correctly reflect the name of the current Assessor of Cook County. On our own motion, we hereby substitute him as a party for his predecessor, Joseph Berrios, as shown above.

¶ 2    Plaintiff Daniel Cuevas, on behalf of himself and others similarly situated, appeals from the judgment of the circuit court of Cook County which dismissed his amended complaint pursuant to section 2-619(a)(4) of the Illinois Code of Civil Procedure, 735 ILCS 5/2-619(a)(4) (West 2018), on the basis of *res judicata*. We affirm.

¶ 3                                    BACKGROUND

¶ 4    This is the third case brought by Cuevas based on actions taken by the Cook County Assessor to seek payment of additional taxes due to Cuevas's improper taking of homestead exemptions on rental properties he owned. This court addressed the first two cases in a consolidated opinion, *Cuevas v. Berrios*, 2017 IL App (1st) 151318 (*Cuevas I*). Because the circuit court dismissed the third case below on the basis that the first two cases were *res judicata* as to the third, we set forth the facts of *Cuevas I* in some detail.

¶ 5    In 2014, the Cook County Assessor sent Cuevas notices of intent to record a tax lien on 11 different properties. The Assessor contended that Cuevas improperly took a homestead exemption on those properties. *Cuevas I*, ¶ 8. After a hearing, a hearing officer in the Assessor's Department of Erroneous Exemptions (Department) issued a written order finding that Cuevas took improper exemptions on the 10 properties at which he did not reside and found him liable to repay over $90,000 in delinquent taxes on those properties for tax years 2007 to 2012. *Id.* ¶¶ 1, 8.

¶ 6    On January 1, 2015, Public Act 98-1143 became effective. The amendments contained in this Public Act were not involved in *Cuevas I* but are relevant to counts in the amended complaint under review in this case which relate to a "notice of discovery" requirement, so we discuss it here in its proper chronology. The new law amended section 9-275(c) of the Property Tax Code (35 ILCS 200/9-275(c) (West 2014)) to require "[u]pon becoming aware of the existence of one or more erroneous homestead exemptions," the Cook County Assessor "shall

cause to be served, by both regular mail and certified mail, a notice of discovery as set forth in [section 9-275(c-5) of the Property Tax Code]". Section 9-275(c-5) was an entirely new section of the Property Tax Code which required that the notice of discovery: (1) identify the property index number relevant to the alleged erroneous homestead exemption; (2) set forth the taxpayer's liability for principal, interest, penalties, and administrative costs, among other things; (3) "inform the taxpayer that he or she will be served with a notice of intent to record a lien within 3 years from the date of service of the notice of discovery"; and (4) "inform the taxpayer that he or she may pay the outstanding amount, plus interest, penalties, and administrative costs at any time prior to being served with the notice of intent to record a lien or within 30 days after the notice of intent to record a lien is served."

¶ 7      On January 6, 2015, Cuevas filed a timely petition for administrative review of the Department's decision (case No. 15 CH 169). As amended, the administrative review complaint alleged that the Department's decision was erroneous because, among other reasons, a new lien and collection system established by Public Act 98-93, and codified as section 9-275 of the Property Tax Code (35 ILCS 200/9-275 (West Supp. 2013)), and used by the Assessor in this instance, could not apply to the 2007-2012 taxes which became delinquent before that law's effective date, July 16, 2013.

¶ 8      On February 10, 2015, Cuevas filed a second lawsuit (case No. 15 CH 2321) which he framed as a class action to also include similarly affected taxpayers. As amended, the complaint asserted numerous claims against section 9-275. These included, among other things: violation of state and federal constitutional guarantees of uniform taxation, equal protection, and due process; vagueness; ambiguity; and arbitrariness. Like the administrative review lawsuit, it also challenged the law's retroactive effect, noting that the tax years in question all pre-dated the

2013 effective date of the law. The two lawsuits were assigned to different judges and were never consolidated or reassigned in the circuit court. *Id.* ¶ 10.

¶ 9 Although the class action case was filed after the administrative review case, it proceeded to final judgment first. In the class action case, the defendants filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)). *Id.* ¶ 11. The section 2-619 portion of the motion argued that the class action complaint should be dismissed because it was duplicative of the pending administrative review case. The section 2-615 portion of the motion argued that the complaint failed to state a valid cause of action because section 9-275's application to Cuevas was, in fact, constitutional. *Id.*

¶ 10 The circuit court denied the section 2-619 portion of the motion, essentially finding that Cuevas could bring his constitutional claims independently of the still-pending administrative review case. However, the court dismissed the class action complaint with prejudice pursuant to section 2-615 of the Code, rejected the constitutional claims, and found that section 9-275's retroactive effect was proper. *Id.* ¶ 12.

¶ 11 The defendants also moved to dismiss the administrative review case, arguing in part that the case was duplicative of the class action case which was still pending before a different judge. The court presiding over the administrative review case granted that portion of the motion, which had the effect of eliminating all of Cuevas's claims except one: whether section 9-275 allowed the defendants to reach back to collect delinquent taxes for the single year of 2007, an issue never addressed in the class action case. The case then proceeded only on the issue of the 2007 tax delinquency. *Id.* ¶ 13.

¶ 12    After briefing on the 2007 tax delinquency issue, the court in the administrative review case held that, because of when the statute became effective, prosecutions for erroneous homestead exemptions could only have begun in 2014, and because section 9-275 only allowed assessments for the prior six years (2008-2013), the hearing officer improperly assessed delinquent taxes for the 2007 tax year. The court therefore reversed the hearing officer's decision as to that particular year, resulting in a small victory for Cuevas. This court consolidated the two timely appeals which followed. *Id.* ¶ 14.

¶ 13    On appeal, this court affirmed both circuit court judgments. *Id.* ¶ 44. As to the class action case, this court rejected several arguments made by Cuevas, which were: (1) by its own terms, section 9-275 could not apply at all to tax years before 2013; (2) applying section 9-275 to those tax years would have an unconstitutionally retroactive effect; (3) because section 9-275 only applied in Cook County, it violated article IX, section 4(a) of the Illinois constitution, which requires that "taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law."; (4) the delinquent taxes collected pursuant to section 9-275 "unjustly enriched" the Cook County Assessor's office. *Id.* ¶¶ 16-30.

¶ 14    In the administrative review case, as noted above, the circuit court had reversed the hearing officer's finding that Cuevas was liable for taxes, penalties, and interest for the 2007 tax year. The court found that because the assessor served Cuevas with a notice of intent to lien in 2014, the six-year period specified in section 9-275(c) with respect to delinquent taxpayers included only the years 2008 through 2013, and excluded 2007, that year being seven years before the service of the notice. *Id.* ¶ 31. On appeal, the county defendants argued that because property taxes are paid in arrears, taxes on the ownership of property during calendar year 2013 are actually paid in 2014. Accordingly, they contended that as to the term "year" in the law, the

General Assembly intended to incorporate this delay, with the result that the sixth-prior "assessment year," 2008, actually referred to the 2007 tax year, whose taxes would be payable in 2008. *Id.* ¶ 39. This court rejected the defendants' interpretation, and agreed with Cuevas and the circuit court that the Department could not impose a judgment for delinquent 2007 taxes. *Id.* ¶ 41.

¶ 15    In sum, this court affirmed the circuit court judgments in both the class action and administrative review cases in all respects. *Id.* ¶ 44.

¶ 16    This court issued *Cuevas I* on March 31, 2017. Afterwards, Cuevas moved in the circuit court to "reinstate" the administrative review case and convert it into a class action regarding the 2007 tax year. His motion referenced both circuit court cases, even though they had not been consolidated in the circuit court. He also requested to "enforce the modification of judgment". On January 8, 2018, the circuit court denied the motion in a written opinion. The court first declined to act on the motion as it applied to the class action case, noting that case was assigned to a different judge, the cases not having been consolidated in the circuit court. As to Cuevas's attempt to convert the administrative review case into a class action, the court stated that "the supposed class has never been part of this litigation" and "the notion that a case can be transformed into a class action *after* final judgment has been entered does not commend itself" because "[i]f the final judgment was adverse to the class, the class members would be unfairly subjected to the effect of a determination in which they were not heard" and "[d]ue process does not permit such a result". The court also cited authorities holding that an administrative review action cannot be maintained as a class action. In sum, the circuit court found "no viable reason" to reinstate the administrative view action and denied leave to amend it to convert it into a class action. The court stated at the conclusion of the opinion that it "expresses no opinion as to

whether the plaintiff may be able to assert his argument in some other proceeding or forum." Cuevas did not appeal that order.

¶ 17   In 2018, again after this court had issued its opinion in *Cuevas I*, Cuevas filed a new class action complaint in the circuit court of Cook County (case 18 CH 3283). Cuevas named the Department of Erroneous Exemptions, then-Assessor Berrios, and the Assessor's "office" as defendants. Cuevas designated a class of plaintiffs consisting of any taxpayers who received a section 9-275 notice of tax delinquency for tax years 2013 to 2018, received a section 9-275 notice of lien upon whom defendants had failed to serve a notice of discovery before serving the lien, or failed to notify the taxpayer that the amount in the lien was due and payable within 30 days. The amended complaint recites the 10 properties involved in *Cuevas I*, and alleges that the circuit court, and this court, held that the Assessor improperly sought to collect delinquent taxes for 2007 under the section 9-275 process. The key allegation of the amended complaint reads:

> "The ASSESSOR and BERRIOS have exceeded their authority under Section 9-275 of the Act, in seeking taxes, fines, penalties and interest for alleged application of erroneous homestead exemptions for the year 2007 and failing to extinguish the underlying debt upon which the lien was based and/or refund the 2007 debt payment to the Plaintiff and the Class, as alleged herein."

¶ 18   The amended complaint further alleges that the delinquent taxes are "unfair" because taxpayers are assessed 10% interest and 50% penalties even though their tax bills did not specify the specific amount of taxes saved by virtue of the homestead exemption; and that defendants served notices of intent to record liens on Cuevas for tax years 2006 through 2012, in the amount of $142,576.60, and recorded liens in 2018, for amounts including the underpayment of real estate taxes due, plus a penalty of fifty (50%) percent of the alleged underpayment, and the

assessment of ten (10%) percent annual interest, even though he did not previously receive a notice of discovery as required by section 9-275(c-5) of the Property Tax Code.

¶ 19   Based on these general allegations, Cuevas pleaded seven counts: (1) breach of section 9-275 of the Property Tax Code for imposing liens for 2007 delinquent taxes; (2) breach of section 9-275(c-5) of the Property Tax Code for not serving a notice of discovery on him or class members before imposing a lien on their properties for delinquent taxes; (3) breach of section 9-275(j) of the Property Tax Code for issuing liens which did not state that the liability created by the lien was due and payable within 30 days after the mailing of the lien; (4) fraud for making the following misrepresentations and omissions of fact in the notices of intent to record a lien: (a) omitting a disclosure that the defendants were exceeding their authority under Section 9-275 by trying to collect delinquencies for the year 2007, (b) failing to serve the notice of discovery required by section 9-275(c-5) of the Property Tax Code; (c) failing to extinguish the lien and underlying debt upon which the lien was based, and/or refund the 2007 debt payment to the plaintiff and class; and (d) failing to include a date of mailing on the notices of lien; (5) unjust enrichment, by retaining tax delinquency payments for the 2007 tax year; (6)  restitution of delinquent tax assessments erroneously paid; and (7) a declaratory judgment that the defendants violated section 9-275 of the Property Tax Code in various ways.

¶ 20   In Count 4, Cuevas alleged that he and the class members had sustained damages and would continue to sustain damages relating to payment of tax arrearages and debt for tax year 2007 and tax years 2013-2018, "on the erroneous homestead exemptions per Section 9-275 of the Illinois Property Tax Code." Cuevas made similar references to the 2013-2018 tax years in Counts 5 through 7, but these references are confusing because the notices of lien attached to the amended complaint only list liability for tax years 2008-2012 and not for the years 2013-2018. In

fact, as noted below, the county defendants assert that the Assessor has never brought an action against Cuevas for years 2013-2018 and nothing Cuevas presents indicates otherwise. See *infra* ¶ 24.

¶ 21    Defendants filed a motion to dismiss all seven counts pursuant to sections 2-619(a)(4) and (a)(9) of the Code of Civil Procedure (Code), 735 ILCS 5/2-619(a)(4), (a)(9) (West 2016). The section 2-619(a)(4) portion of the motion argued that the case was barred by the doctrine of collateral estoppel because Counts 1, 4, 5, 6, and 7 were identical to those resolved in the *Cuevas I* cases, and by *res judicata* because Cuevas's remaining claims arose from the same operative facts as those at issue in *Cuevas I*.

¶ 22    That left the remaining counts, counts 2 and 3. As to count 2, the defendants argued that Cuevas's objections to the lack of service of a notice of discovery was without merit, because section 9-275(c-5) of the Property Tax Code, which was the basis for the claim in Count 2, was not effective until January 1, 2015, which was several weeks after Cuevas had already been found liable, thus making the pre-hearing notice requirement inapplicable. Notably, as well, the law was in force before Cuevas filed either of the two cases at issue in *Cuevas I*.

¶ 23    As to Count 3, defendants argued that section 9-275(j) of the Property Tax Code contained no requirement that the notice contain language that the amount sought was due and payable within 30 days. However, since the statute itself stated that the lien was due and payable within 30 days, taxpayers were on fair notice of their obligations regardless of the omission of admonitory language in the notice.

¶ 24    As to both Counts 2 and 3, the defendants expressed puzzlement that Cuevas was requesting "relief for not only tax year 2007, but additionally for tax years 2013 through 2018" even though he was "never charged with receiving erroneous homestead exemptions for tax

years 2013 through 2018 because the Assessor did not grant any requests for homestead exemptions on Cuevas's rental properties in 2013 through 2018 because of his pending cases." Having not received homestead exemptions for those years, Cuevas had no possible liability for erroneous homestead exemptions.

¶ 25    Because many of the counts had either already been raised and resolved in *Cuevas I*, or could have been, and because the new counts did not allege an actual violation of a statute, the defendants asked that the amended complaint be dismissed in its entirety pursuant to section 2-619(a)(4) of the Code. Additionally, the section 2-619(a)(9) portion of the motion stated that the amended complaint should be dismissed as moot because in *Cuevas I*, Cuevas had already been awarded the relief of the elimination of the delinquency for the 2007 tax year.

¶ 26    In response, Cuevas first stated that he would not oppose dismissal without prejudice of counts 2 or 3, and the portions of count 4 that alleged a breach of 35 ILCS 200/9-275(c-5) and 35 ILCS 200/9-275(j). As to the remaining counts, Cuevas stated that he sought "to adjudicate a completely separate and new issue, *i.e.*, that the Defendants failed to extinguish the underlying debt upon which the lien was based, which could not have been brought before the Court until the final determination by the Appellate Court was rendered, because there was no debt until the judgment was rendered." Explaining further, he stated that that the defendants had "only asserted a claim against Plaintiff that *could* mature into a debt, but no judgment establishing a debt subject to a lien had been issued." (Emphasis in original). Cuevas claimed that the defendants "did not issue any liens against Plaintiff until January of 2018" and it was "only then that [he became] aware that liens were recorded for years 2008 through 2012". He also stated that while the defendants did not record a lien for 2007 delinquent taxes, they did not provide a release of "judgment" for the 2007 tax year. In sum, Cuevas claimed that his third lawsuit was

not barred by *Cuevas I* because the new complaint "expressly pleads that the Defendants failed to extinguish Plaintiffs and the Class' underlying debt upon which the liens were based."

¶ 27    Cuevas also argued that the case was not moot, because, as he argued earlier, the "underlying debt" of the 2007 tax year had not yet been extinguished.

¶ 28    In reply, the county defendants again expressed puzzlement at what it believed to be Cuevas's assertion of a cause of action unknown to Illinois law, that being one for "extinguishment of a debt". They explained that when the circuit court (and by analogy, this court) reversed the finding of liability for tax year 2007, the "underlying debt" for that year was automatically extinguished. The county defendants expressly disclaimed there was any "underlying debt or liability for the 2007 tax year on Plaintiff's 10 rental properties", citing *N.C. by & through L.C. v. A.W. by & through R.W.,* 305 Ill. App. 3d 773, 775 (1999) (holding where there is no debt in the first instance, there is no need for a lien).

¶ 29    On March 1, 2019, the circuit court entered an order dismissing the complaint pursuant to section 2-619 with prejudice. The circuit court orally stated that this court's opinion in *Cuevas I* and the underlying circuit court orders at issue in that case "did make a ruling on whether the underlying exemption was proper" thus barring the new case under the doctrine of *res judicata.* This appeal followed.

¶ 30                                    ANALYSIS

¶ 31    On appeal, Cuevas argues that the circuit court erred in dismissing the complaint on the basis of *res judicata.* In particular, he asserts that in *Cuevas I*, this court did not "make any findings or references as to the question of the underlying debt" for the 2007 delinquency, thus preserving the issue for future litigation. Notably, he does not, however, point to any specific

recorded or written, but unreleased, lien referencing the 2007 delinquency which this court eliminated in *Cuevas I*.

¶ 32    The county defendants' motion to dismiss was brought under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)). Under section 2-619, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. As a result, a motion to dismiss pursuant to section 2-619 should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id*. We review *de novo* the trial court's judgment on section 2-619 motions to dismiss. *Id*.

¶ 33    Section 2-619(a)(4) permits involuntary dismissal of a claim where the claim is barred by other affirmative matters defeating or avoiding the legal effect of the claim, such as a claim of *res judicata*. 735 ILCS 5/2-619(a)(4) (West 2018); *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 558 (2005).

¶ 34    "Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). "The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id*. "For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Id*.

¶ 35    Here, all three requirements are met. First, there was a final judgment on the merits issued by this court in *Cuevas I*. Second, as explained below, the cause of action was the same,

namely, the elimination of the 2007 tax delinquency. Third, the parties in this case—Cuevas himself and various subparts of the Assessor's office—are the same as those in *Cuevas I*.

¶ 36    In *River Park*, our supreme court explained that, to determine whether there is an identity of cause of action, there are two tests employed by various courts: the " 'same evidence' " test and the " 'transactional' " test. *Id*. at 307. Under the same evidence test, a second suit is barred if "the evidence needed to sustain the second suit would have sustained the first," whereas the transactional test provides that different theories of relief still results in a single cause of action if "a single group of operative facts give rise to the assertion of relief." (Internal quotation marks omitted.) *Id*. After reviewing the two tests, the *River Park* court approved use of the more liberal transactional test and rejected the more narrow same evidence test, observing that the Restatement (Second) of Judgments (1982), as well as federal courts and numerous state courts also favored use of the transactional test. *Id*. at 311-12.

¶ 37    Under the transactional test, claims are a part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction or "series of connected transactions" from which the action arose. *Id*. at 311 (quoting Restatement (Second) of Judgments § 24, at 196 (1982)). " 'What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *Id*. at 312 (quoting Restatement (Second) of Judgments § 24, at 196 (1982)). Illinois does not require the same evidence or the identical theory of relief. *Id*. at 311. For purposes of *res judicata*, separate claims are considered the same cause of action if they arise from a single group of operative facts, regardless of differing

theories of relief. *Id*. *Res judicata* extends not just to what was decided in the first suit, but also to those matters that could have been decided. *Id.* at 302.

¶ 38    The circuit court correctly found that there was an identity of cause of action between this case and the prior two cases. Five of the seven counts in the new amended complaint simply rehashed issues addressed in *Cuevas I*. The other two counts, Counts 2 and 3, were properly dismissed on the basis of *res judicata* because they could have been decided in *Cuevas I*. *River Park* at 302.

¶ 39    Count 2 alleged that the taxpayers failed to receive a notice of discovery as required by section 9-275(c) and (c-5) of the Property Tax Code. However, the notice of discovery requirement was established in state law before Cuevas filed either of the two lawsuits at issue in *Cuevas I*. Therefore, if Cuevas thought the requirement applied to him, he could have raised it in the first two lawsuits. See *supra* ¶¶ 6-8. Additionally, Count 2 simply failed to state a cause of action because the notice of discovery requirement was not enacted until after the Assessor had completed the hearing process on Cuevas's improper homestead exemptions, and the statute imposing the notice of discovery contains no language stating it was to have retroactive effect on administrative cases already heard and resolved.

¶ 40    Count 3 alleged that the defendants violated section 9-275(j) of the Property Tax Code because they sent notices without specific language that the amount sought was due and payable within 30 days. However, since the statute itself stated that the lien was due and payable within 30 days, taxpayers were on fair notice of their obligations regardless of the omission of admonitory language in the notice. Again, nothing prevented Cuevas from asserting this claim in his earlier lawsuits, resulting it being barred by *res judicata*.

14

¶ 41     Therefore, both Counts 2 and 3 were barred by *res judicata.* Although the circuit court did not dismiss these counts on the basis they did not state a cause of action, we also hold that there were properly dismissed for failure to state a cause of action pursuant to section 2-615 of the Code because Cuevas's allegations were without merit. We review the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 42     Cuevas makes a final argument that this third lawsuit was necessary because the county defendants did not obey this court's mandate in *Cuevas I*, in that they did not "issue a release for the 2007 tax lien debt claimed by the Defendants." This argument fails for two reasons. First, pursuant to the mandate of *Cuevas I*, the delinquent tax assessment for the 2007 tax year was extinguished. Consequently, so was any lien that might have been implicitly or explicitly imposed for that delinquency. Second, putting aside the point that this court's mandate is directed to the circuit court, not the parties, the appropriate remedy when the mandate is not obeyed is to seek relief from the court which received the mandate. Our supreme court has explained: "It is impossible to negate every possible issue in an opinion and therefore the rule is that "(w)here *** the directions of a reviewing court are specific, a positive duty devolves upon the court to which the cause is remanded to enter an order or decree in accordance with the directions contained in the mandate. Precise and unambiguous directions in a mandate must be obeyed." *Stuart v. Continental Illinois National Bank & Tr. Co. of Chicago*, 75 Ill. 2d 22, 27-28 (1979), *quoting Thomas v. Durchslag*, 410 Ill. 363, 365 (1951).

¶ 43     Cuevas tried to seek relief regarding the lien for the 2007 taxes in the circuit court by moving, after this court had issued its mandate in *Cuevas I*, to transform his administrative

review lawsuit into a class action lawsuit, but the circuit court declined to allow the amendment at that late stage. (Again, we emphasize that there does not seem to be a specific recorded lien for the 2007 taxes that needs to be released.) Cuevas did not appeal from the order denying the amendment, but instead filed this new lawsuit. As explained above, that course of action was barred by *res judicata.*

¶ 44    This disposition renders it unnecessary for us to consider whether the amended complaint should have been dismissed as moot.

¶ 45                                    CONCLUSION

¶ 46    The judgment of the circuit court of Cook County is affirmed.

¶ 47    Affirmed.